BELK, APPELLANT, *v.* BELK, APPELLEE.

(No. 10398—Decided March 18, 1968.)

*Messrs. Scherer & Klusmeier,* for appellant.
*Mr. Eugene K. Purdy,* for appellee.

Long, P. J. This is an appeal on questions of law from the Common Pleas Court of Hamilton County, Division of Domestic Relations, wherein that court found that the child of the parties is the issue of the marriage and rendered judgment ordering the defendant husband to support such child.

The admitted and uncontradicted facts in the case are as follows: The wife, prior to the marriage, had sexual intercourse with one Jerry Brown in January 1966, resulting in the conception of the child in question. The husband was on active duty in the U. S. Navy in the Mediterranean Sea and was given a brief furlough. He returned to the United States where he met and married the appellee on March 5, 1966.

As husband and wife they returned to the husband's duty station at Norfolk, Virginia, and in approximately four weeks the wife left her husband, telling him that she couldn't make a go of the marriage and that she couldn't and wouldn't live with him as husband and wife. This is admitted by the wife in her testimony. She abandoned her husband without cause, returning to her parents' home in Cincinnati. In spite of numerous appeals by the husband and the writing of many letters by him begging her to return and keep her promise to make a home for him and the baby, and to live with him as a wife according to the pledges of the marriage vow, she refused. The parties never lived together thereafter.

After his realization that his wife had abandoned her agreement, the husband filed suit for divorce in July 1966. On October 25, 1966, the wife gave birth to the child in question and, on October 3, 1967, almost a year later, the court granted the husband a divorce on the ground of gross neglect, but held that the child was born as the issue of the marriage and ordered the husband to support the child.

This court is not unmindful of the decision in the case of *Miller* v. *Anderson,* 43 Ohio St. 473, 54 Am. St. Rep. 823,

where it is held that where a man marries a woman, knowing her to be pregnant by another man, "the man so marrying, consents to stand in *loco parentis* to such child, and is presumed in law to be the father of the child, and this presumption is conclusive." With this broad statement of the law this court does not agree. We feel that in the case at bar this rule should not apply.

The *Miller case, supra,* is referred to in the case of *Gustin* v. *Gustin,* 108 Ohio App. 171, in the opinion at page 173 as constituting the "landmark which remains unchanged by subsequent decisions. That principle is, not that the husband must be regarded as the biological father, but that he has elected to put himself *in loco parentis* and thus legitimate the child who cannot thereafter be bastarized by divorce."

But it must be remembered that the *Miller-Anderson case* was a bastardy proceeding in which the mother of the child was trying to hold the biological father as the real father of her child and hold him for its support. The Supreme Court of Ohio affirmed the District Court saying in its opinion, at page 474: "That he [the marrying man] married her with full knowledge of her condition of pregnancy, *and continued to live with her as her husband till his death, which occurred two and a half years afterward."* (Emphasis added.)

In the *Gustin case* cited above, the wife informed the husband that she was pregnant by another man; nevertheless, he married her on November 5, 1955. The child was born during real wedlock and the parties were thereafter divorced on February 28, 1958. The parties lived together, however, as husband and wife until the filing of the petition for divorce. In all the cases cited, where there was a marriage, the pregnant woman lived together with the man she married and established a home for him and the future baby. The other cases cited are bastardy cases and have no application here.

It must be kept in mind that marriage is the result of contract. Under the circumstances of the case at bar, what was the promise of the husband in this case? He promised not only to be a husband but to live with her as husband

and wife and make a home for her and the future baby, to which he agreed to stand *"in loco parentis"* in all sacredness. What was the promise moving from the wife, which he in justice was entitled to rely upon and which was the consideration for his promise? She agreed to be a wife to him and mother to the child, in a new home created by this husband. What did she do? The record is replete with clear and convincing evidence that she perpetrated a terrible deception; it is undisputed by this woman that before and at the time of the marriage she never intended to be a wife; that she told him immediately after the marriage that it would never "work out"; that she couldn't and wouldn't remain married to him. The record is indisputable that this woman married this gullible sailor for the sole purpose of legitimatizing her bastard child which was to be born and to "hook" a sucker for its future support. It is true that she did go back with her husband to Norfolk, Virginia, for four short weeks. There, with little or no fervor, she was the sailor's bedfellow, with resentment in her heart and tongue in cheek; the amusement was not even of the variety with which she entertained the man who is the father of her child—but never was there any contrition of the Magdalene.

This court feels that each case of this kind should stand on its own bottom. We cannot follow the reasoning of the *Gustin case, supra,* which holds that the wife is deprived of her right to pursue Jerry Brown as the real father of her child; nor are we impressed with the idea that the appellant should be saddled with the future support of the child in this case because of the piety of public policy involving the marriage relation. The appellant's obligation to support the child in this case was based on the condition that the wife carry out the obligation on her part to be performed. She elected not to give the marriage a chance. It must be kept in mind that the child in this case was not born in true wedlock. True, it was born while the appellant and appellee were still married, or, to put it another way, the divorce had not as yet been granted. They only lived together four weeks when the wife left her husband without cause, never to return.

We think that the case which most clearly fits the case at bar, and is better reasoning, is *State* v. *Oldaker,* 28 Ohio Law Abs. 495. While this was a criminal case against a reputed father for failure to provide, the facts were that the husband knew that his wife was pregnant by another man. The wife left her husband the day after the marriage without any excuse and never returned or offered to return. The court held that such a situation *does not warrant a conclusive presumption that the husband is the father of the child and make him liable for its support.* Paragraph two of the headnotes states:

"Where a child is neither conceived nor in any *true sense born in wedlock,* a holding of no conclusive presumption of responsibility for support on the part of the husband *does not violate any principle of public policy relative to the marriage relation.*" (Emphasis added.)

The only difference between that case and the case at bar is the time that the wife left her husband. In the *Oldaker case* the marriage lasted twenty-four hours; in this case, four weeks.

It is the opinion of this court that the judgment below be modified. That part of the judgment granting appellant a divorce is affirmed; that part of the judgment finding him to be the father of the child and liable for the support of such child is reversed. Final judgment in conformity with this opinion is rendered in favor of appellant and against appellee.

*Judgment accordingly.*

HILDEBRANT and SHANNON, JJ., concur.