(No. C-74696—Decided March 1, 1976.)

*Mr. Robert A. Pitcairn, Jr.*, for appellant.
*Messrs. Wilke & Goering*, for appellee.

Dahling, J. This is an appeal from the domestic relations division of the Court of Common Pleas of Hamilton County, wherein the plaintiff, the appellant herein, was granted a divorce and was ordered to pay child support.

The parties were married on June 7, 1969, at which time the defendant, the appellee, was pregnant by another man and plaintiff knew of this fact. On September 9, 1969, a child, Anthony Burse, was born to defendant. The plaintiff stated at the hospital that he was the father of the child and his name appears as the father on the birth certificate. The parties lived together for about a year and a half during which time the plaintiff treated the child as his son. The appellee left the appellant in July, 1971, and took the child with her.

On September 26, 1974, plaintiff filed a complaint for divorce alleging that one child was born of the marriage—namely, Anthony, five years of age. The complaint further stated the ground for divorce was that for at least two

years immediately preceding the filing of the complaint the parties had lived separate and apart. Defendant filed a cross-complaint for a divorce, and for custody and support of the minor child. Plaintiff then filed an amended complaint for divorce, but omitted any allegation as to children born of the marriage.

On December 6, 1974, a divorce was granted to plaintiff on the grounds that the parties had lived separate and apart for at least two years prior to the filing of the action. Plaintiff was ordered to pay support for Anthony, in the sum of $25 per week; was given reasonable visitations; and was ordered entitled to claim Anthony as an exemption on his federal income tax return.

The plaintiff has presented the following proposition for review:

"The court erred in holding that Anthony Burse was found to be issue of the marriage and in ordering plaintiff-appellant Floyd Burse to pay support for said Anthony Burse based on the uncontroverted facts of this case."

The question is whether and under what circumstances a man can be ordered to pay child support when he marries a woman with knowledge of her pregnancy by another and later obtains a divorce from that woman. There are three important Ohio cases which we have considered in reaching our conclusion.

The first is *Miller* v. *Anderson* (1885), 43 Ohio St. 473.

The facts in that case were that Emiline Miller had been pregnant by James M. Anderson at the time she married Riddlemoser. Riddlemoser knew of the pregnancy and that he was not the natural father of the child, but accepted the child as his own and provided for the wife and child until his death, some two and a half years later. After Riddlemoser's death, Emiline Miller filed a paternity suit against James M. Anderson. The court held Anderson was not liable for support and adopted the reasoning expressed by the Supreme Court of Iowa in a similar case, as follows:

"If another man, not the father of the unborn child, elects to stand in *loco parentis* to the child, the law will esteem such man as the father; that one who marries a

woman that he knows to be *enciente* is regarded in law as adopting the child into the family at its birth; that he could not expect the mother to discard it or abandon it at its birth, or refuse it nurture or maintenance, and that the child, so receiving nurture and support, must necessarily become one of the family of the wife, which would also be of the family of the husband; that this understanding must necessarily enter into the marriage contract of the husband and wife, and when this relation is established the law raises a conclusive presumption that the husband is the father of such child.'' (Page 480.)

The second case is *Gustin* v. *Gustin* (1958), 108 Ohio App. 171, which was a divorce action. The facts in *Gustin* are similar to those in the instant case in that prior to the marriage the woman informed her soon to be husband that she was pregnant by another man. Therefore, the marriage took place with the husband's full knowledge of the wife's pregnancy. Thereafter, the child was born and the parties lived together for approximately a year and a half before Mrs. Gustin filed for a divorce, custody, and support.

The appellate court in *Gustin* affirmed the trial court's order of support and its reasoning, at page 173, was as follows:

''Defendant apparently stakes his hope upon what he contends is a mellowing judicial tendency. We can fully appreciate his sense of hardship. But it must be remembered that he has voluntarily taken this burden upon himself. The basic philosophy of *Miller* v. *Anderson, supra* (43 Ohio St., 473), which determines this case, constitutes a landmark which remains unchanged by subsequent decisions. That principle is, not that the husband must be regarded as the biological father, but that he has elected to put himself *in loco parentis* and thus legitimate the child who cannot thereafter be bastardized by divorce.''

At page 174, the court continued:

''By the marriage the defendant husband deprived the plaintiff wife of the right to institute bastardy action against the natural father, Section 3111.01. Revised Code.; *Miller* v. *Anderson, supra.* He himself has voluntarily as-

sumed the burden instead, thereby profoundly altering the status, rights and responsibilities of others. He must, therefore, continue to meet his obligation, onerous as it may now seem to him.''

The final and most recent case is that of *Belk* v. *Belk* (1968), 13 Ohio App. 2d 212, where the husband married the wife with full knowledge that she was pregnant by another man. A short four weeks later she left him. He filed for divorce and the court ordered him to pay child support. The appellate court reversed and made the following critical observation, at page 215:

''* * * What did she do? The record is replete with clear and convincing evidence that she perpetrated a terrible deception; it is undisputed by this woman that before and at the time of the marriage she never intended to be a wife; that she told him immediately after the marriage that it would never 'work out'; that she couldn't and wouldn't remain married to him. The record is indisputable that this woman married this gullible sailor for the sole purpose of legitimatizing her bastard child which was to be born and to 'hook' a sucker for its future support.

''* * * The appellant's obligation to support the child in this case was based on the condition that the wife carry out the obligation on her part to be performed. She elected not to give the marriage a chance.''

The court in *Belk* referred to the case of *State* v. *Oldaker* (1938), 28 Ohio Law Abs. 495 where the wife left the husband the day after the marriage. The court at 216, quoted paragraph two of the headnotes in *Oldaker*, as follows:

''Where a child is neither conceived nor in any *true sense born in wedlock,* a holding of no conclusive presumption of responsibility for support on the part of the husband *does not violate any principle of public policy relative to the marriage relation.*''

Our view is that *Belk* can be distinguished in that the appellate court in *Belk* concluded the woman had committed a fraud at the inception of the marriage. In the instant case, the plaintiff does not contend the defendant commit-

ted a fraud upon him. The parties lived with the child, Anthony, for one and a half years during which time the plaintiff treated the child as his son.

It is natural for a pregnant woman to be primarily concerned with protecting her unborn child and in our society marriage is considered a source of security. As a consequence, rushed marriages similar to the one in the instant case do occur and some of these are terminated by an early divorce. However, the man at the time he marries the woman, knowing the woman is pregnant by another man, should be cognizant that he is foreclosing the chances of the unborn child of being legitimatized by its natural father and is barring a bastardy action by the mother against the natural father. R. C. 3111.01. Further, he is assenting to becoming the father of the child.

The serious consequence of the man's act in marrying a pregnant woman can be compared to that of the man that adopts his wife's child. The fact that the marriage is later dissolved by divorce does not alter the substantial financial and moral obligations resulting from the father-son relationship. In the instant case, the plaintiff owes not only the duty of support, but he also has the duty to visit the child and be a father to him. Apparently, the plaintiff feels justified in reneging on both responsibilities to his son because the marriage did not survive.

We conclude that where a man marries a woman who is pregnant by another man, and there is no showing of fraud in the inception of the marriage, the husband is conclusively presumed to be the father of the child.

Plaintiffs assignment of error is without merit.

*Judgment affirmed.*

GRAY, P. J., and AMMER, J., concur.

GRAY, P. J., of the Fourth Appellate District; DAHLING, J., of the Eleventh Appellate District; and AMMER, J., of the Court of Common Pleas of Pickaway County, sitting by designation in the First Appellate District.