CALE PRODUCTS, INC., APPELLANT, *v.* ORRVILLE BRONZE & ALUMINUM COMPANY, APPELLEE.

(No. 1821—Decided December 22, 1982.)

*Mr. Roger W. Van Deusen,* for appellant.

*Mr. David J. Hooker* and *Mr. Steven F. Gladstone,* for appellee.

VICTOR, P.J. This appeal arises from a contract action brought by the appellant, Cale Products, Inc., against Orrville Bronze & Aluminum Company, appellee. Cale Products sought to recover a balance of approximately $6,000 due on a contract to repair and rebuild a lathe owned by Orrville Bronze. The defendant denied that any amount was due and counterclaimed for damages suffered by reason of breaches by the plaintiff.

The action was tried to the court without a jury on April 26, 1982. On April 27, the court announced its decision from the bench as follows:

"* * * it is the judgment of the Court that the plaintiff has breached the contract and is not entitled to recover on its complaint.

"The Court finds that the defendant is entitled to recover on its counterclaim as amended. I have awarded to the defendant damages in the amount of Five Thousand Dollars."

On May 3, the plaintiff requested findings of fact and conclusions of law pursuant to Civ. R. 52. Later that day, the court filed its judgment entry with the clerk for journalization. The entry stated, in pertinent part:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that defendant recover damages from plaintiff on its counterclaim as amended in the sum of Five Thousand Dollars ($5,000.00), for which sum judgment is hereby awarded."

Neither party took an appeal from this judgment, and neither filed motions under Civ. R. 59 or 60. On May 13, the court requested Orrville Bronze, the prevailing party, to submit proposed findings and conclusions as authorized by Civ. R. 52. Those proposed findings, filed with the court on May 28, assessed the damages due Orrville Bronze in the amount of approximately $35,000 instead of the $5,000 previously awarded by the court. The defendant also sent a brief letter to the court indicating its belief that the evidence supported a recovery of all sums paid the plaintiff. Copies of this letter and the proposed findings were served on Cale Products, which, according to the court's amended judgment entry, objected by letter to the proposed increase in damages. That letter does not appear in the record.

On June 3, one day after the appeal time had run on the first judgment, the court entered a modified judgment which stated in part:

"The Court has reviewed the defendant's proposed findings of fact and conclusions of law and the evidence adduced at trial and has concluded that the judgment previously announced in this case should be, and it hereby is, modified to provide that the defendant shall recover from the plaintiff the full amount of the purchase price paid to the plaintiff, $34,988.03, together with interest since the date of payment at the legal rate."

The plaintiff now appeals from the order of June 3, which modified the court's judgment of May 3. It alleges as error that:

"1. The court below erred in, and was without authority to enter the judgment entry of June 3, 1982 which attempted to 'modify' its prior final judgment entry of May 3, 1982 by increasing sevenfold the monetary judgment against plaintiff-appellant.

"2. The court below erred in granting judgment for the defendant-appellee and against plaintiff-appellant on both the complaint and counterclaim, which judgment is against the manifest weight of the evidence.

"3. The court below erred as a matter of law in awarding damages to the defendant-appellee in that A) there was a failure of proof of damages and B) the court failed to reduce damages, if any, by the amount previously paid to defendant-appellee by the common carrier's insurer."

The procedural issue raised in the first assignment of error is whether a court has the power to modify its prior judgment without complying with the Civil Rules. The defendant argues that the common law, the inherent power of a court to vacate or modify its judgments, has survived the adoption of the Ohio Civil Rules. The plaintiff contends that the rules provide the exclusive means by which a court may modify its judgment. We find this latter view the more persuasive.

Under pre-rules practice it was firmly established that a court had inherent power to modify or vacate a judgment during the term at which it was rendered. Once the term had ended, such relief could be granted only pursuant to former R.C. 2325.01 and its predecessors, provisions analogous to present Civ. R. 60(B). Because the applicable statutes failed to set forth grounds or procedures for modifying judgments within term, the Ohio Supreme Court held that the common-law discretionary power remained in the court throughout the term:

"*In this absence of legislative enactment* the common-law rule must apply, for it would be a strange anomaly indeed that a court given the power to vacate its judgment after the term should have no power to vacate a judgment within or at the same term." (Emphasis added.) *First National Bank* v. *Smith* (1921), 102 Ohio St. 120, 122.

The issue in *Smith* was whether a court was required to follow statutory procedures when vacating a judgment during term. Concluding that those procedures did not apply to in-term modifications, the court emphasized the lack of applicable legislation or rules of court as the basis for its holding:

"* * * [I]n some jurisdictions a rule of court exists making it necessary as a matter of practice to follow the procedure outlined in Chapter 6 in seeking to vacate or suspend a judgment, where the application is made at the same term in which the judgment was rendered.

"*We think this is a wholesome rule in furtherance of good practice,* especially in reference to judgments taken on cognovit instruments and by confession. *But we are constrained to hold that* in the face of such a rule the court may not be limited or concluded to the grounds enumerated in Section 11631, General Code; and, *in the absence of such a rule of court, the court may not be limited or concluded by the method of procedure outlined in Chapter 6.*" (Emphasis added.) *Id.* at 123.

In modern practice, Civ. R. 6(C) has done away with the in-term-after-term distinction:

"* * * The existence or expiration of a term of court in no way affects the power of a court to do any act or take any proceeding in any civil action consistent with these rules."

And Civ. R. 60 states in part that:

"The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules."

The Civil Rules provide a unified and comprehensive scheme for the granting of relief from judgment irrespective of terms of court, the very sort of "wholesome rule in furtherance of good practice" envisioned in *Smith, supra.* It would be anomalous to hold that an inherent discretionary power, no longer limited in duration by the expiration of the term of court, remains viable outside of this procedural framework.

The appellee has directed our attention to *Rabb* v. *Bd. of Commrs.* (1930), 36 Ohio App. 481, and cites the first paragraph of the syllabus for the proposition that a "court has power, on own motion or otherwise, to suspend or vacate default judgment during term at which it was rendered." We are persuaded that this rule, to whatever extent it was applicable to judgments other than those taken by default, has not survived the adoption of the Civil Rules. Because the rules have filled the "statutory void" which existed under prior practice regarding in-term modifications, we conclude that the second paragraph of the syllabus in *Rabb, supra,* rather than the first, is the surviving rule:

"After expiration of term, [the] court is powerless to suspend or vacate [a] default judgment, unless [the] statute is strictly complied with * * *."

The following *dictum* in *Rabb,* describing the uncertain state of a judgment before the term of court has expired, reinforces this conclusion:

"* * * [T]here should come a time when the judgment obtained by default at a preceding term might become imbued with a permanent character, and thus have the sanctity of a pronouncement of judgment that does not depend upon the mere will, discretion, choice, or judgment of the court which rendered the judgment by default. As soon as the court was bereft of the power which existed until the end of the term, then and thereupon the judgment of the plaintiff became a right that was vested, because it could not be molested by the mere whim of the court, and could only lose its force and virtue by operation of the statute, which had reference only to this new situation which accrued subsequent to the ending of the term of court wherein the judgment by default was pronounced. That vested right, bereft of the instability and uncertainty which characterized its existence during the term of court at which it was rendered, became the property of the plaintiff and had the same force and virtue under the law as if it were a judgment pronounced upon a verdict after a full trial and full proceedings had thereon. When the term ended, the judgment was unreversed and unmodified, and because of the ending of the term and the crippling of the power of the court the judgment was infused with a new life, and the only power which remained to the court that pronounced the judgment by default was to vacate it at a succeeding term, upon motion or petition founded upon statutory grounds * * *." *Id.* at 484.

A judgment is now final, effective and "imbued with a permanent character" when filed with the clerk pursuant to Civ. R. 58. We cannot subscribe to the view that this inherent discretionary power, formerly recognized only during the term of court, has been extended *ad infinitum* by Civ. R. 6(C). An assumption underlying these pre-rules opinions is that a unified statutory scheme governing all modifications of judgments would abrogate a court's power to vacate or modify its judgment without observing procedural formalities.[1]

Recent Ohio appellate cases have expressed the view that Civ. R. 60(B) provides "the exclusive grounds which must be present and the procedure which must be followed in order for a court to vacate its own judgment." *McCue* v. *Insurance*

---

[1] It should be noted that this sort of power does exist under the rules with regard to "clerical mistakes" in judgments and "errors therein arising from oversight or omission." Civ. R. 60(A) permits a court "at any time on its own initiative or on the motion of any party and after such notice, if any," as the court requires, to correct such mistakes. The defendant has not attempted to invoke Civ. R. 60(A) and it seems clearly inapplicable to these facts. The rule has been narrowly applied to inadvertent clerical errors only. See Annotation, 13 A.L.R. Fed. 794, for an analysis of the analogous federal provision.

Co. (1979), 61 Ohio App. 2d 101 [15 O.O.3d 103]. See, also, *Matson* v. *Marks* (1972), 32 Ohio App. 2d 319 [61 O.O.2d 476]; *Antonopoulos* v. *Eisner* (1972), 30 Ohio App. 2d 187 [59 O.O.2d 309]; McCormac, Civil Rules Practice (1970), Section 13.27.

We have likewise held that:

"* * * Whether within term or without, the power of a court to alter its judgment must be consistent with the rules. * * *." *Ford Motor Credit Co.* v. *McMasters* (Aug. 15, 1979), Summit App. No. 9188, unreported, at page 5. See, also, *Lakco Mortgage Co.* v. *Pihlblad* (1981), 1 Ohio App. 3d 67; *Household Finance Co.* v. *Burt* (Nov. 7, 1979), Summit App. No. 9336, unreported.

In the instant cause, the amount of damages awarded the defendant, if erroneous at all, was a judicial error of the sort normally remedied by direct appeal. The court could, however, have proceeded on its own initiative or on motion by the defendant, under Civ. R. 59(A):

"On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and enter a new judgment."

Neither the court nor the parties chose to invoke this provision. The defendant could have sought relief from judgment pursuant to Civ. R. 60(B) upon proper motion before the time for appeal had expired,[2] but chose not to do so.

---

[2] Ohio courts hold that Civ. R. 60(B) "may not be used as a substitute for a timely appeal as a means to circumvent App. R. 4(A) which establishes an appeal period of thirty days." *Bosco* v. *Euclid* (1974), 38 Ohio App. 2d 40 [67 O.O.2d 209], paragraph two of the syllabus. Many federal courts permit a party to seek relief pursuant to Fed. R. Civ. P. 60(b)(1) for "judicial error," but only when the motion is filed within appeal time limits. See Annotation, 1 A.L.R. Fed. 771.

In these circumstances we find that the appellant's first assignment of error must be sustained. The trial court was without power to enter a "modified" judgment thirty-one days after final judgment had been rendered and in a manner not authorized by the Civil Rules. We accordingly reverse the court's amended judgment of June 3, 1982. Because no appeal was perfected from the final judgment entered May 3, 1982, we are without jurisdiction to consider the errors assigned as to the merits of that decision.

The judgment of the trial court is reversed and final judgment is entered for defendant for $5,000. Costs taxed to appellee.

*Judgment reversed.*

BELL and QUILLIN, JJ., concur.