CARSON, Appellant,

v.

CARSON, Appellee. ▮

[Cite as *Carson v. Carson* (1989), 62 Ohio App.3d 670.]

Court of Appeals of Ohio,
Brown County.

No. CA88–06–008.

Decided May 1, 1989.

*Thomas F. Grennan,* for appellant.
*Timothy B. Carson, in pro. per.*

YOUNG, Judge.

Petitioner-appellant, Tamela Carson, and petitioner-appellee, Timothy B. Carson, were married on December 13, 1975. At the time of the marriage, appellant was pregnant with her first child, Travis Carson, born June 2, 1976. A second child, Tracey Carson, was born June 3, 1977. On October 24, 1980, the Brown County Court of Common Pleas dissolved the marriage pursuant to the petition of the parties and adopted their separation agreement, which provided, *inter alia,* that appellee pay $50 per week for the support of the two minor children deemed to be issue of the marriage.

On January 16, 1985, appellant brought a show cause motion alleging non-payment of support. Appellee responded on April 8, 1985 by filing a motion to modify the decree of dissolution and to reduce the child support order and arrearages. Appellee claimed that appellant had fraudulently represented to him prior to their marriage that he was the father of Travis and that he did not discover this fraud until after the dissolution. The trial court overruled appellant's motion to dismiss and ordered the parties to submit to blood grouping tests for the purpose of establishing the probability of paternity.

Human Leukocyte Antigen ("HLA") tests were performed and appellee was excluded as the father of Travis. The trial court then dissolved the original order of support in regard to Travis, reduced the arrearage to zero, and absolved appellee of further responsibility for the support of Travis. Appellant then perfected the instant appeal and set forth two assignments of error:

"Assignment of Error No. 1:

"The Court below errored [*sic*] to the prejudice of the Appellant by overruling Appellant's motion to dismiss, where Appellee's 60(B) motion was more than three years out of time."

"Assignment of Error No. 2:

"The Court committed prejudicial error by granting the Appellee's motion, where the law at the time of the entry of the decree of dissolution of marriage presented an irrebuttable presumption that children born during the coverture of a marriage are the children of the husband."

In her first assignment of error, appellant contends that the trial court erred in failing to dismiss appellee's motion to modify as untimely. Appellant's argument is based upon a presumption that appellee's motion was filed pursuant to Civ.R. 60(B).[1] We find appellant's reliance upon Civ.R. 60(B) to be misplaced.

■ As a general rule, Civ.R. 60(B) provides the exclusive means by which a party may obtain relief from a judgment. *Sperry v. Hlutke* (1984), 19 Ohio App.3d 156, 19 OBR 246, 483 N.E.2d 870; *Cale Products, Inc. v. Orrville Bronze & Alum. Co.* (1982), 8 Ohio App.3d 375, 8 OBR 489, 457 N.E.2d 854. However, where a trial court has issued a decree of divorce or dissolution which provides for the custody and support of minor children of the parties, the court retains continuing jurisdiction with respect to the support of such children and may modify the support provisions as changed circumstances may require. *Peters v. Peters* (1968), 14 Ohio St.2d 268, 43 O.O.2d 441, 237

---

1. Civ.R. 60(B) provides in part:

"(B) Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud; etc. On motion and upon such terms are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. * * *"

N.E.2d 902; *Cooper v. Cooper* (1983), 10 Ohio App.3d 143, 10 OBR 194, 460 N.E.2d 1137. The court's continuing jurisdiction is invoked by motion in the original action and service of process as provided in Civ.R. 4 through Civ. R. 4.6. Civ.R. 75(I); *Hansen v. Hansen* (1985), 21 Ohio App.3d 216, 21 OBR 231, 486 N.E.2d 1252.

In the case at bar, appellee's motion to modify the original support order did not delineate the procedural grounds upon which it was based and appellee did not file a brief on appeal. In the court below, however, appellee argued, in a memorandum contra to appellant's motion to dismiss, that the motion to modify was filed pursuant to Civ.R. 75(I) and not Civ.R. 60(B). It appears from the record that the trial court also treated appellee's motion as invoking its continuing jurisdiction. Therefore, we will address the propriety of the trial court's ruling from this perspective.

In order to properly invoke the court's continuing jurisdiction under Civ.R. 75(I), service must be made in accordance with Civ.R. 4 through Civ.R. 4.6. Civ.R. 4 requires service upon the defending party. In the present case, appellee did not serve appellant with the motion to modify, but provided notice by mail to the attorney for appellant. Such notice fails to satisfy the requirements of Civ.R. 75(I). *Hansen, supra.* At no time, however, did appellant object to the court's jurisdiction because of lack of service. Furthermore, the record discloses that appellant herself invoked the court's continuing jurisdiction with respect to support by filing a show cause motion. Accordingly, we find that appellant waived any objection to the court's exercise of continuing jurisdiction. *Cooper, supra.*

In order to justify the modification of an existing support order, the moving party must demonstrate a substantial change of circumstances which "render[s] unreasonable an order which once was reasonable." *Bright v. Collins* (1982), 2 Ohio App.3d 421, 425, 2 OBR 514, 518, 442 N.E.2d 822, 828. The change of circumstances advanced by appellee is his discovery after the decree of dissolution that he was not the natural father of Travis as represented by appellant at the inception of the marriage. Appellant argues in her second assignment of error, however, that appellee cannot raise the issue of paternity because the law existing at the time of the decree created a conclusive presumption that children born during the marriage are the children of the husband.

In support of her argument, appellant relies upon *Miller v. Anderson* (1885), 43 Ohio St. 473, 3 N.E. 605, and *Hall v. Rosen* (1977), 50 Ohio St.2d 135, 4 O.O.3d 336, 363 N.E.2d 725. In both of these cases, the Ohio Supreme Court held that a man who knowingly marries a pregnant woman is deemed to have contractually consented to stand *in loco parentis* to the child and to

being the father of the child. *Hall, supra,* syllabus. The decisions in *Miller* and *Hall,* however, were expressly overruled in *Johnson v. Adams* (1985), 18 Ohio St.3d 48, 18 OBR 83, 479 N.E.2d 866, where the Supreme Court held that "[a] man who marries a woman while she is pregnant is presumed to be the natural father of any child born from such pregnancy. This presumption of paternity can be rebutted by clear and convincing evidence." *Id.* at paragraph two of the syllabus.

Appellant argues that the rebuttable presumption set forth in *Johnson, supra,* cannot be applied retrospectively to the case at bar and that *Miller* and *Hall* are controlling.[2] In light of the unique circumstances of this case, we find it unnecessary to address the retrospectivity of *Johnson, supra.*[3] The outcome is the same regardless of whether we apply *Johnson* or the *Miller* and *Hall* line of authority.

*Miller* and *Hall* created a conclusive presumption of paternity when a man married a pregnant woman. However, subsequent cases interpreting *Miller* and *Hall* modified this rule and created a rebuttable presumption where there was fraud in the inception of the marriage. *Belk v. Belk* (1968), 13 Ohio App.2d 212, 42 O.O.2d 376, 235 N.E.2d 530; *Burse v. Burse* (1976), 48 Ohio App.2d 244, 2 O.O.3d 197, 356 N.E.2d 755. Therefore, even under the law prior to *Johnson,* appellee could rebut the presumption of paternity by presenting clear and convincing evidence of fraud and nonpaternity.

The trial court found that the actions of appellant caused appellee to believe that he was the father of the child appellant was carrying at the time of the marriage and that appellee did not discover the misrepresentation until after the dissolution. Thus, the showing of fraud required by *Belk, supra,* and *Burse, supra,* was made. The results of the HLA testing also provide clear and convincing evidence that appellee is not the father of Travis. This evidence certainly constitutes a change of circumstances which justifies a modification of the original support order.

---

**2.** The court in *Johnson* also ruled that the provisions of R.C. Chapter 3111 which make the presumption of paternity rebuttable in such situations cannot be applied retroactively. *Johnson, supra,* at paragraph one of the syllabus. Appellant does not challenge this holding. Appellant's sole argument with respect to *Johnson* concerns the retrospective application of its decision to overrule *Miller, supra,* and *Hall, supra.*

**3.** We note, however, that, absent a contrary indication in the overruling decision itself:
  "The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision." *Peerless Electric Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467, 468.

We note appellant's concern that an affirmance would have the effect of making Travis Carson an illegitimate child. We share this concern and recognize the general policy of the law in favor of legitimacy. See *Brooks v. Fair* (1988), 40 Ohio App.3d 202, 207, 532 N.E.2d 208, 212; *Comer v. Comer* (1962), 119 Ohio App. 529, 533, 28 O.O.2d 142, 144, 200 N.E.2d 656, 658, affirmed (1963), 175 Ohio St. 313, 25 O.O.2d 182, 194 N.E.2d 572. In the case at bar, however, an overriding policy objective comes into play: ascertainment of the truth. See *Garrett v. Garrett* (1977), 54 Ohio App.2d 25, 33, 8 O.O.3d 41, 46, 374 N.E.2d 654, 661. The trial court concluded that appellant had fraudulently represented to appellee that he was the father of Travis and thereby induced him to assume the obligations of marriage and fatherhood. When the truth of Travis' parentage was ascertained, the court refused to perpetuate the fraud initiated by appellant and relieved appellee of his obligation to support Travis. Under the circumstances, we cannot say that the trial court abused its discretion. Accordingly, appellant's first and second assignments of error are overruled.

*Judgment affirmed.*

HENDRICKSON, J., concurs separately.

JONES, P.J., dissents.

HENDRICKSON, Judge, concurring separately.

In concurring with the majority, I recognize a distinction between the case *sub judice* and *Ketzel v. Ketzel* (May 1, 1989), Warren App. No. CA88-08-062, unreported, 1989 WL 42998, in that in the case *sub judice*, appellee by motion demanded the relief which the trial court granted. He failed, however, to serve the notice of his motion in the manner specified by Civ.R. 75(I), but appellant failed to object to the manner of service. Thus, since service can be waived and by appellant's inaction was waived in this case, the issue was before the trial court. However, in *Ketzel, supra, no motion for increased child support was pending;* thus there was nothing before the trial court to confer jurisdiction to consider the question of increased child support. Consequently, in *Ketzel,* appellant could not waive anything.

JONES, Presiding Judge, dissenting.

I am unconvinced by the majority decision and must accordingly dissent. In my view, the only procedural avenue open to appellee was Civ.R. 60(B). Appellee's motion ostensibly sought a modification of the dissolution decree itself, a reduction in child support, and a reduction in child support arrearage. In his memorandum in support of his motion, appellant claims that he was defrauded into entering the marriage, the separation agreement and the

resulting dissolution. Simply stated, appellee was attempting to raise fraud under a motion without designating it as a Civ.R. 60(B) motion.

Civ.R. 60(B) provides for the following:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

"The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules."

A domestic relations court has continuing jurisdiction to modify a dissolution decree with respect to matters of custody, visitation and child support. R.C. 3105.65(B). Civ.R. 75(I) states that "[t]he continuing jurisdiction of a court shall be invoked by motion filed in the original action * * *." Civ.R. 75(I) is used to seek a change in a domestic relations order on the ground that circumstances have changed since the original order was entered. *McKinnon v. McKinnon* (1983), 9 Ohio App.3d 220, 9 OBR 370, 459 N.E.2d 590. On the other hand, Civ.R. 60(B) involves a procedure for granting relief from a judgment not otherwise modifiable. *Id.* Thus, the choice depends on the particular reasons for the motion. Where a change of circumstances justifies a different result, the court may modify a decree when its continuing jurisdiction is properly invoked under Civ.R. 75(I). A Civ.R. 60(B) motion would be used in the event of inadvertence, mistake, newly discovered evidence, fraud or neglect which existed at the time of the original judgment.

In the case at bar, the allegation of fraud in the inducement of marriage does not indicate that circumstances have changed since the dissolution. The fraud, if such was present, existed at the time of the original dissolution and would warrant relief from that part of the decree which establishes appellee as Travis Carson's father.

Civ.R. 60(B) does not speak to the amendment of a final judgment, but to the vacation of that judgment. Civ.R. 60(B) originates from the court's

inherent right to review its own decisions. See *Demianczuk v. Demianczuk* (1984), 20 Ohio App.3d 244, 20 OBR 305, 485 N.E.2d 785; *Sperry v. Hlutke* (1984), 19 Ohio App.3d 156, 19 OBR 246, 483 N.E.2d 870. In reviewing a change of custody motion, the Montgomery County Court of Appeals stated the following in the first paragraph of the syllabus in *Tatom v. Tatom* (1984), 19 Ohio App.3d 198, 19 OBR 306, 482 N.E.2d 1339:

"Relief from judgment pursuant to Civ.R. 60(B) may apply to the custody part of a divorce decree if the custody part of the original decree is found to have been obtained by fraud or any other recognizable circumstance set forth in Civ.R. 60(B)(1) through (5). However, the relief granted is *not* a change of custody, but the setting aside of the original custody award on the basis that the award was defective at its inception."

The separation agreement incorporated into the decree of dissolution stated that Travis Carson was born as issue of the parties' marriage. Appellee moved to modify the support provisions of the dissolution decree when, in actuality, he was seeking to vacate that portion of the decree which states that Travis Carson was the issue of the marriage. Appellee sought to vacate the parent-child relationship established by the decree. As in the *Tatom* case, the relief granted below was not a modification of support but the setting aside of the finding of paternity in the original decree on the basis that such finding was defective at its inception. The trial court could not relieve appellee of his support obligations unless it vacated the underlying parent-child relationship between appellee and Travis Carson.

Appellee's motion was unquestionably predicated upon his claim that he had been defrauded into believing that he was the natural father of Travis Carson. I am convinced that such constitutes a claim for relief from judgment under Civ.R. 60(B)(3) and that such motion was required to be filed not more than one year after the judgment was entered. It is simply too late for appellee to challenge the paternity question. Having failed to timely file the motion, appellee was not entitled to the relief granted.

Even assuming that the motion was timely filed, appellee still was not entitled to the requested relief because he failed to establish fraud by the requisite standard of proof. Evidence of fraud must be made by clear and convincing evidence in order to justify the vacation of a judgment. See *Wilson v. Wilson* (1968), 14 Ohio App.2d 148, 43 O.O.2d 340, 237 N.E.2d 421. Clear and convincing evidence requires proof which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 18 OBR 419, 481 N.E.2d 613. The statement of evidence submitted under App.R. 9(C) indicates that prior to the marriage appellee had been informed that the child

was not his. Appellee even told one witness prior to the marriage that he knew he was not the child's father. The record indicates that the evidence was less than clear and convincing and does not support the trial court's finding that fraud had been perpetrated upon appellee to force him into the marriage.

In conclusion, I find that appellee did not file his motion within the time required by Civ.R. 60(B) and that the record fails to support a finding of fraud by clear and convincing evidence. The trial court had absolutely no authority to determine the paternity issue at this late date and its decision should be reversed. For these reasons, I respectfully dissent.