Appellant appeals the trial court's decision denying his motion to modify child support, the trial court's imputation of income to him, the trial court's computation of appellant's arrearage, and the trial court's order requiring appellant to pay $20,000 to purge his contempt. While the record reveals no abuse of discretion in the trial court's denial of appellant's motion to modify child support or in its decision to impute income to appellant, the record does reveal that the trial court erred in its computation of appellant's arrearage and, thus, also in its order requiring appellant to pay $20,000 to purge his contempt. Therefore, this matter is affirmed in part and reversed and remanded in part to allow the trial court to correct its calculation of appellant's arrearage and to adjust its order as it pertains to appellant's option of purging his contempt.
Appellee Mary Jo Fasano and appellant David Fasano were married on July 6, 1985. Four children were born as issue of the marriage. On June 12, 1996, appellee filed a complaint seeking a divorce from appellant.
On September 4, 1996, the trial judge issued a temporary support order, retroactive to the June 12 filing date. The temporary order provided that appellant was to pay to appellee the sum of $1,186.85 per month for the support of the four minor children and $1,326 per month as spousal support pendente lite until further order of the court. Appellee thereafter filed three separate motions to show cause why appellant should not be held in contempt for failure to comply with the court's September 4, 1996 order. Appellant filed a motion to modify child support on July 8, 1997.
The parties entered into an agreed entry that settled all issues of custody, visitation and parenting. On December 16, 1997. the court commenced the trial on the divorce and also heard evidence relating to the outstanding motions.
Testimony in the trial revealed the following facts relevant to the within appeal. Appellant's occupation was that of a builder and project manager. Appellant and appellee had lived in California prior to moving to the Cleveland, Ohio area. Appellant testified that he had been self-employed for several years and, working in that capacity, had earned $184,717 in 1990, $181,257 in 1991, and $81,000 in 1992.
Appellant and appellee moved to Cleveland in 1993. Soon after they arrived in Cleveland, appellant worked for Kopf Builders for a few months and then for Scott Construction. Appellant left Scott Construction in January 1995 and began to work for North Coast Home Improvement in March 1995. During the interim two-month period, appellant received unemployment compensation and also performed construction work for family members.
Bradley Opacich testified that he was doing business as North Coast Home Improvement at the time he met appellant. He learned appellant was a builder and project manager and hired him to work for his company. He testified that appellant was "good" at what he did.
In 1996, appellant was a salaried employee, earning $52,000 plus health insurance and one week paid vacation. Mr. Opacich rated appellant's abilities as a project manager as an "eight" on a scale of one to ten.
While he was employed with North Coast, appellant also performed "side jobs" until Mr. Opacich prohibited such work in 1996. In early 1996, appellant performed a side job for which he received $21,000.00.
While reviewing his tax return for the year of 1996, appellant admitted that he had forgotten to include another side job from which he had received $1,000.00. Appellee testified that appellant performed many side jobs throughout their marriage and was often paid for his work in cash. She speculated these side jobs earned appellant approximately $10,000 annually.
Around the time of December 1996, Mr. Opacich testified that appellant's work began to falter. For example, in 1996, appellant was second to Mr. Opacich in sales; in 1997, he had no sales. Mr. Opacich also testified that appellant began to take "excessive time off." Furthermore, appellant missed a deadline for finishing a project he was managing. Mr. Opacich terminated appellant as a salaried employee on June 30, 1997. His family health insurance benefit plan was also terminated.
Mr. Opacich thereafter hired appellant as an independent contractor, performing carpentry work. From September 17 through December 9, 1997, Mr. Opacich paid appellant approximately $7,000.00.
After appellant was terminated in June 1997, appellant asserted that he sought employment with various builders that he "called through ads in the phone book." He also "went around asking." Appellant testified that he did no work in July or August because he was searching for a job and he thought that to take a position for less than he was currently earning would have "hurt [him] in the long run." Appellant did submit a list of contractors that he had obtained from the local union hall. He testified that he contacted them but was unable to find work. Appellant admitted he did not apply for unemployment benefits during this time. He also conceded he did not search any "want ads" in any newspapers or other publications.
Appellant testified that in September 1997, he decided to go into business for himself. Appellant claimed that the reason he earned only $7,000 from June until December 1997 was because he was "building up a business."
In August 1997, the health insurance for appellant's children lapsed. In spite of a court order that he provide health insurance, appellant testified that he was unable to do so due to its high cost. He claimed that he made "three or four" phone calls in an attempt to secure insurance for them.
The testimony of appellant and a female friend with whom appellant shared a social relationship also reveals that, in 1997, appellant and his female friend vacationed in Slovakia, Prague, Rome, Palm Springs and Maui. It was during this period that appellant was terminated as a salaried employee and, as a result, lost his family health insurance plan benefits.
Appellee testified that she had last worked full-time in 1989. She recently began working several part-time jobs. Appellee also testified that appellant had threatened to quit his job so that she would not receive support payments.
The trial court issued its Judgment Entry of Divorce with Findings of Fact and Conclusions of Law on February 2, 1998. The court awarded the divorce to appellee and, inter alia, ordered appellant to pay $1,175.28 per month in child support and $1,000 per month in spousal support. The court denied appellant's motion to modify the temporary support order. The trial judge also held appellant in contempt of court for failure to comply with the prior child support order. As a result of the contempt finding, the court sentenced appellant to thirty days in jail but with an opportunity to purge the contempt by paying the sum of $20,000 within thirty days.
Appellant timely appealed the trial court's decision.
Appellant's first assignment of error states:
 THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING FASANO'S MOTION TO MODIFY THE TEMPORARY SUPPORT ORDER.
Appellant first argues that the trial court's denial of his motion to modify the temporary support order constituted an abuse of discretion.
On July 8, 1997, appellant filed a motion to modify his child support obligation on the basis that he had been discharged from his employment with North Coast Home Improvement and was currently unemployed. The trial court, in its journal entry, found that appellant "voluntarily permitted himself to be terminated from Northcoast Home Improvement and is today deliberately making himself uncollectible and underemployed." Thus, the trial court denied appellant's motion to modify child support.
When requesting the modification of an existing child support order, the moving party must demonstrate a substantial change in circumstances rendering unreasonable an order which once was reasonable. Baker v. Grathwohl(1994), 97 Ohio App.3d 116, 118, citing Carson v. Carson(1989), 62 Ohio App.3d 670, 673. R.C.3113.215(B)(4). Although unemployment may constitute a change of circumstances, voluntary unemployment does not signify a change in circumstances sufficient to justify such a modification. Baker, supra, citing Boltz v. Boltz(1986),31 Ohio App.3d 214, 216; Haynie v. Haynie
(1984), 19 Ohio App.3d 288; Smith v. Smith
(1983), 12 Ohio Misc.2d 22. The determination of whether a parent is voluntarily unemployed or voluntarily underemployed is a question of fact for the trial court. Rock v.Cabral(1993), 67 Ohio St.3d 108, 112.
Generally, the standard applied when reviewing a trial court's determination in a domestic relations case is the "abuse of discretion" standard. Booth v. Booth(1989), 44 Ohio St.3d 142,144. Thus, the court's role:
 * * * is to determine whether the trial judge's decision was an abuse of discretion, not whether it was the same decision we might have made. Wargo v. Price(1978), 56 Ohio St.2d 65, 10 O.O.3d 116, 381 N.E.2d 943. Not only is our role limited to review, but the review itself has narrow limits:
 "* * * We have repeatedly held `[t]hat the term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Huffman v. Hair Surgeon, Inc.
(1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252.
Wilmington Steel Products, Inc. v. Cleve. Elec. Illum. Co.
(1991), 60 Ohio St.3d 120, 122. This court has recognized that an award of temporary spousal support will not be disturbed on appeal absent a showing that the trial court acted in an unreasonable, arbitrary or unconscionable manner. See Oatey v.Oatey(Apr. 25, 1996), Cuyahoga App. Nos. 67809, 67973, unreported.
A review of the record indicates the trial court did not abuse its discretion. There is ample evidence in the record to support the trial court's determination. Appellant had performed his job very well until 1997. Then, during the pendency of the divorce, he missed many days and failed to timely complete a project. His employer testified that the reason he terminated appellant's employment was because of the decline in appellant's performance.
Moreover, appellant admittedly earned in the range of $100,000 annually while he was self-employed from 1990 through 1992. Additionally, the efforts to which he testified regarding his search for employment after he was terminated in June 1997 are unimpressive. He admitted he never searched the "want ads"; he merely called contractors who were listed in the Yellow Pages. Appellant also failed to seek unemployment compensation during this period although he had previously received such compensation when he had been out of work. The trial court's finding that appellant was "voluntarily" unemployed is not an abuse of discretion.
Additionally, appellant contends the trial court abused its discretion in its temporary support order by requiring a withholding of more than the maximum amount permitted by law. R.C. 3113.21 authorizes the withholding of support payments by the employer of an individual who is obligated to pay child support. R.C. 3113.21(D)(1)(a) also limits the amount that may be withheld as follows:
 However, in no case shall the sum of the amount specified in the notice to be withheld and any fee withheld by the payor as a charge for its services exceed the maximum amount permitted under section 303(b) of the "Consumer Credit Protection Act," 15 U.S.C. § 1673(b).
According to the Consumer Credit Protection Act, the maximum that may be withheld in appellant's situation is sixty percent.
There is no dispute that appellant's employer withheld the maximum sixty percent; it is appellant's contention that the order required additional payments and was, therefore, in conflict with the statute. Appellant's argument is unconvincing. The plain language of the statute indicates that it applies only to the amount of money permitted to be withheld, not to the total amount of support that may be awarded. See, e.g., In re Yeauger
(1992), 83 Ohio App.3d 493, footnote 3 (amount ordered withheld from wages for child support may not exceed guidelines of Consumer Credit Protection Act; when amount withheld is insufficient, obligor must supplement withheld payments from other sources). Moreover, there is evidence to indicate that appellant performed several side jobs for cash, providing him with income in addition to his wages.
Appellant's first assignment of error is overruled.
Appellant's next assignment of error contends:
 THE TRIAL COURT ABUSED ITS DISCRETION IN IMPUTING $62,000 IN EARNINGS TO FASANO FOR PURPOSES OF CALCULATION OF FUTURE SUPPORT.
In its Findings of Fact and Conclusions of Law, the trial court determined that appellant "could easily obtain a job making a minimum of $1,000.00 a week for a gross annual salary of $52,000.00. In addition, the evidence was convincing that Mr. Fasano has always been able to obtain side jobs and that his income would be a minimum of an additional $10,000.00 a year." Thus, the trial court imputed as income to appellant the sum of $62,000.00. Appellant alleges the additional $10,000 imputed to him constitutes an abuse of discretion by the trial court.
R.C. 3113.215 defines "income" for the calculation of child support obligation, as either:
 (a) For a parent who is employed to full capacity, the gross income of the parent;
 (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent.
"Potential income" includes:
 Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides [.]
The record indicates that while he was employed at North Coast Home Improvement, appellant continued to work side jobs for additional income. Appellee testified that he had several jobs each year and was primarily paid in cash. As an example, the work appellant performed for the female friend with whom he vacationed was a side job and earned him at least $21,000.00. While reviewing his 1996 tax return, appellant also admitted that he had failed to include a job that had earned him $1,000.00. Although appellant testified that he did not keep records of his side jobs, appellee testified that appellant performed such work consistently throughout their marriage and was often paid in cash. Moreover, the $62,000 imputed to appellant was less than he had earned in 1990, 1991, or 1992.
The trial court's conclusion that appellant's income should include an additional $10,000 per year is supported by the record in this matter and does not constitute an abuse of discretion.
Appellant's third assignment of error states:
 THE TRIAL COURT ERRED IN DETERMINING FASANO'S SUPPORT ARREARAGE TO BE $21,143.17, AND IN HOLDING HIM IN CONTEMPT FOR HIS FAILURE TO PAY THAT AMOUNT.
The trial court's temporary support order journalized on September 4, 1996 and corrected nunc pro tunc on September 18, 1996 required appellant to pay $2,512.85 per month through the Cuyahoga Support Enforcement Agency (CSEA) retroactive to June 12, 1996, the date of filing. The parties do not dispute that appellant paid to appellee the sum of $8,339.92 from the period of June 12, 1996 through August 31, 1996; thus overpaying in the amount of $2,100.00.
However, the trial court also found that appellant failed to make any payments as required through CSEA following the court's order from the beginning of September 1996 through December. The trial court based this conclusion on the parties' Joint Exhibit 1, a print-out from CSEA. Although appellant stipulated to the admission of this exhibit, the record indicates that this exhibit is incomplete. A review of appellant's payroll records reveals that North Coast began to deduct payments for CSEA beginning with appellant's September 30, 1996 pay period. The print-out from CSEA fails to reflect any payments made prior to December 12, 1996. Thus the record indicates the trial court inadvertently overlooked payments made to CSEA totaling $4,561.05.
The court calculated that appellant should have paid $35,713.50 from September 1, 1996 through November 18, 1997 ($2,643 ordered in support each month x 14.5 months). Appellant had paid an overage in the sum of $2,100 from June through August 1996 and had paid $12,470.33 from December 12, 1996 through November 18, 1997, thus leaving an arrearage in the amount of $21,143.17 ($35,713.50 — $2,100 — $12,470.33). However, as indicated by the payroll records, an additional $4,561.05 was paid to CSEA and was not taken into consideration in the trial court's computations. Thus, the correct arrearage is $16,582.12.
Appellant also alleges the print-out fails to show payments made directly to CSEA totaling $1,620; however, appellant admits that "due to the mistake concerning Joint Exhibit 1, no evidence of these payments is in the record." This court can only review the record before it on appeal. App.R. 12. Thus, there is no support for appellant's contention regarding these alleged direct payments.
Finally, appellant maintains that the trial court's calculations were improper since they were based on its erroneous denial of appellant's motion to modify the temporary support order and were in violation of R.C. 3113.21. As discussed more extensively above, the trial court's decisions were correct.
Therefore, appellant's third assignment of error is well-taken insofar as the trial court failed to take into account payments made from September 30, 1996 to December 12, 1996, totaling $4,561.05.
Appellant's final assignment of error states:
 THE TRIAL COURT ERRED IN REQUIRING FASANO TO PAY $20,000 TO PURGE HIS CONTEMPT, WHERE THAT AMOUNT WAS BASED ON AN ERRONEOUS AND GROSSLY OVERSTATED AMOUNT OF ARREARAGE FOR WHICH A FINDING OF CONTEMPT WAS PERMISSIBLE.
Appellant maintains that the amount set by the trial court to purge his contempt was based on its computation of an arrearage which was inflated and is, thus, overstated.
"Contempt is a disregard of, or disobedience to, an order or command of judicial authority" and may be classified as either civil or criminal, distinguished by the character and purpose of the punishment imposed. Carroll v. Detty(1996), 113 Ohio App.3d 708,711, citing State v. Flinn(1982), 7 Ohio App.3d 294. The punishment for civil contempt is remedial or coercive in nature and is for the benefit of the complainant. Carroll, supra, citingPugh v. Pugh(1984), 15 Ohio St.3d 136; Brown v. Executive 200,Inc.(1980), 64 Ohio St.2d 250. Importantly, one who is found to be in civil contempt must be allowed the opportunity to purge himself of contempt. Carroll, supra at 712, citing In re Purola
(1991), 73 Ohio App.3d 306; Fry v. Fry(1989), 64 Ohio App.3d 519; Tucker v. Tucker(1983), 10 Ohio App.3d 251.
Appellant was properly given the opportunity to purge himself of the court's finding that he was in contempt; however, since the correct amount of appellant's arrearage is $16,582.12 rather than $21,143.17 as initially computed by the trial court, the trial court's order that appellant pay the sum of $20,000 in order to purge his contempt is excessive. Therefore, this matter is remanded solely to allow the trial court to enter the corrected amount of appellant's arrearage and to set a more appropriate amount that appellant must pay in order to purge the court's finding of contempt.
This cause is affirmed in part and reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant and appellee shares equally in the costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER, A.J. and ANN DYKE, J., CONCUR
 ___________________________________ JUDGE KENNETH A. ROCCO
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).