SPERRY, APPELLEE, *v.*
HLUTKE, APPELLANT.

(No. 47704 — Decided July 23, 1984.)

*John T. Corrigan,* prosecuting attorney, and *Robert J. Greene,* for appellee.

*William Wuliger* and *Steven D. Jones,* for appellant.

ANN MCMANAMON, J. Charles Joseph Hlutke (respondent-appellant) appeals an order by a judge of the Domestic Relations Division of the Court of Common Pleas of Cuyahoga County which vacated a judgment finding Glenda V. Sperry (f.k.a. Hlutke, petitioner-appellee) in contempt.

The record discloses that the parties were divorced in the Lorain County Court of Common Pleas on February 19, 1976. Appellee was awarded custody of the four children of the marriage, subject to visitation privileges by appellant. Subsequently, appellee moved the children to Indiana with the court's permission, and with the provision that appellant retain his rights to visitation.[1] Ap-

---

[1] Appellant was permitted to have the children four weeks in the summer, for one-half of the children's Christmas vacation and alternating Easter Holidays.

pellant has resided in Cuyahoga County since sometime after the divorce.

Proceedings in the Cuyahoga County Domestic Relations Division were initiated on February 27, 1981 when the county prosecutor filed a complaint on behalf of Glenda Sperry under the Reciprocal Enforcement of Support Act (R.C. Chapter 3115). Her suit sought to compel appellant to pay an accumulated child support arrearage and to increase the amount of appellant's monthly support obligation.[2]

A hearing was had on appellee's complaint, and, on April 14, 1981, appellant was ordered to pay $320 per month ($80 per child) for support. Appellant was subsequently also ordered to pay an additional $50 per month on the arrearage. Appellant filed motions to modify these support orders on May 6, 1982 and February 10, 1983, but, after hearings, each motion was overruled.

On March 22, 1983, appellee brought a show cause motion claiming appellant had failed to pay the previously ordered child support. Appellant responded with another motion to modify and a motion for appellee to show cause based upon appellee's alleged failure to honor appellant's visitation rights. These motions were heard by a court referee on June 30, 1983. Appellant's arrearage was determined to be $5,520.03. In addition, the referee found that Mrs. Sperry had "willfully, deliberately and maliciously denied the father, Charles J. Hlutke, Jr., visitation rights with the parties' minor children, and has continuously violated the visitation orders of Lorain County, Ohio Court of Common Pleas." As a consequence, a finding was made that appellant was "justified in withholding support pending the mother's compliance with the previous visitation orders."

The referee recommended that ap-

pellee be found in contempt of court and he further proposed that appellant not be found in contempt for his failure to make support payments. Instead, the referee recommended that appellant be ordered to pay $20 per month on his arrearage and that he continue to pay $320 per month child support but that these sums be withheld by the Cuyahoga County Bureau of Support for one year, pending compliance by appellee with appellant's visitation rights.

On August 30, 1983, by an agreed judgment entry, the referee's findings and recommendations were adopted by the court. This appeal was precipitated when the court vacated that judgment on October 21, 1983. Appellant raises two assignments of error, both of which are meritorious:

I

"The trial court erred in granting appellee relief from judgment based upon an unsigned and unverified letter to the court, purportedly written by appellee, but neither served upon appellant or [sic] filed with the clerk of courts."

II

"Under the provisions of the Ohio Reciprocal Enforcement of Support Act, the trial court had jurisdiction to hear appellant's evidence regarding appellee's visitation denials and to impound support payments as a result thereof."

A

The journal entry vacating the judgment reflects that the trial judge received a personal letter from appellee on September 23, 1983, which the court chose to treat as a "motion for Relief from Judgment Local [sic] 60(B)(5)."

In his first assignment of error appellant challenges this order to vacate on the basis that the letter, which was unsigned and unverified, was neither

[2] The complaint was originally filed October 13, 1980 in the Circuit Court of Kosciusko County, Indiana under Indiana's Uniform Reciprocal Enforcement of Support Act. That court subsequently caused the complaint to be transmitted to the Cuyahoga County Court of Common Pleas.

served upon appellant nor filed with the clerk of court. He argues that such a missive fails to comport with the requirements of Civ. R. 60(B) and *East Ohio Gas Co.* v. *Walker* (1978), 59 Ohio App. 2d 216 [13 O.O.3d 234].

The substance of Glenda Sperry's letter to the trial judge is a claim that she had received no "personal" notice of the proceedings, that she was unaware of any of the actions taken in Ohio until September 1983 and that she had not authorized the Cuyahoga County Prosecutor to enter into any agreed judgment on her behalf. Mrs. Sperry also opined that her husband's protest concerning denial of visitation was an attempt on his part to avoid child support obligations.

We find that Mrs. Sperry's letter is, in fact, unsworn and unverified, and that it was not filed with the clerk or served upon appellant.

In *McCue* v. *Buckeye Union Ins. Co.* (1979), 61 Ohio App. 2d 101 [15 O.O.3d 103], this court noted that prior to the enactment of the Ohio Rules of Civil Procedure it was an accepted common-law doctrine "that a court has inherent power, in the exercise of sound discretion, to vacate its own judgments * * *." *Id.* at 104. However, this doctrine has been rendered inapplicable by the Civil Rules, and Civ. R. 60 "provides the *exclusive* procedure to be followed and the grounds which must be present in order to vacate a judgment." (Emphasis added.) *Id.* at 104. See, also, *Cale Products, Inc.* v. *Orrville Bronze & Alum. Co.* (1982), 8 Ohio App. 3d 375, 378-379.

Civ. R. 60(B) provides:

"Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud; etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

"The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules."

Under this subsection "[t]he procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules." It should also be noted that in contrast to subsection (A)[3] of this rule relating to clerical mistakes, there is no provision in subsection (B) permitting the court to vacate a judgment on its own initiative.

In addition to compliance with the Civil Rules, the Ohio Supreme Court has held that parties seeking relief from judgment under Civ. R. 60(B) must demonstrate by proper evidentiary materials that the motion was timely, that the party has a meritorious claim or

---

[3] Civ. R. 60(A) provides:

"Clerical mistakes. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court."

defense on the merits and that the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5). *Colley* v. *Baxell* (1980), 64 Ohio St. 2d 243, 246 [18 O.O.3d 183].

This court has also held that mere unsworn allegations of facts contained in a Civ. R. 60(B) motion are insufficient evidence upon which to vacate a judgment. See *East Ohio Gas Co.* v. *Walker, supra.*

Clearly, appellee's letter fails to comply with the foregoing requirements. Appellee's letter also fails to comply with the service and filing requirements contained in Civ. R. 5, and the formal requirements for written motions set forth in Civ. R. 7.[4]

One of the unsworn allegations in appellee's letter is that she was not personally served and, therefore, lacked any knowledge of the legal proceedings below. We recognize that the requirements of Civ. R. 60(B) do not apply where a party attacks a judgment for want of personal jurisdiction. In that instance the judgment is not voidable but is void. *Watts* v. *Brown* (Aug. 4, 1983), Cuyahoga App. No. 45638, unreported, at pages 11 and 12.

However, we find that *Watts* has no application in the subject case because, on its face, the record demonstrates appellant's compliance with the Civil Rules. Although appellee's letter raises a question to the judge concerning her home address and service of pleadings to her residence, the record reveals that in every instance service was made upon her attorney of record, the county prosecutor.[5] Under Civ. R. 5, all service subsequent to the original complaint shall be made upon a party's attorney of record. Clearly appellee was served in accordance with this rule.

The remaining major allegation in appellee's letter is that her attorney exceeded his authority in representing her in the proceedings which led to the agreed journal entry. This court has held that where a party properly demonstrates that his attorney was without authority to settle or compromise a claim or defense, then the party may seek to vacate that judgment *pursuant to Civ. R. 60(B)(5)*. See *Fanta* v. *Minerd* (Apr. 3, 1980), Cuyahoga App. No. 39491, unreported.

Thus, while appellee's allegation concerning her attorney may afford grounds for relief from judgment, application for this relief must be made in accordance with Civ. R. 60(B).

Even assuming, *arguendo,* that appellee's failure to comply with Civ. R. 60(B) could be overlooked, it was an abuse of the court's discretion to vacate its previous judgment on the basis of a personal letter.

In *Lesh* v. *Lesh* (Mar. 22, 1979), Cuyahoga App. No. 38379, unreported, this court considered a somewhat analogous situation in which a personal letter to the trial court was placed in the court file. The letter contained matters of an evidentiary nature which supplemented a motion for reconsideration. The contents of the letter were highly prejudicial. At page 6 of the opinion the court held that:

"* * * Requirements of due process and Civ. R. 5(A) mandate that any pleading submitted to the court be brought to the opposing party's attention. We will not construe Civ. R. 5(A) so narrowly as to permit a party to submit motions or evidence to the court in letter form so as to circumvent the rule of notifying the opposing party. * * *"

We must apply the same rule to the case at bar. At a minimum, due process required that appellant receive service

---

[4] Reporter's Note: Civ. R. 5 and 7 were reproduced in their entirety as appendices in the original opinion; however, the appendices have been deleted from the reported opinion.

[5] It should be noted that the county prosecutor is also appellee's attorney on appeal.

of appellee's letter, and an opportunity to refute her allegations.

This assignment of error is well-taken.

B

In granting appellee relief from judgment, the trial court based its decision, in part, on a finding that it lacked jurisdiction to hear appellant's claim in regard to denial of visitation rights. The court further found that it was without authority to impound child support payments pending a demonstration that appellee complied with the visitation rights previously ordered on behalf of appellant by the Lorain County Court of Common Pleas.

Appellant argues in his second assignment of error that these findings are erroneous.

The provisions of the Reciprocal Enforcement of Support Act (R.C. Chapter 3115) are dispositive.

Under R.C. 3115.08, jurisdiction of all proceedings brought under R.C. 3115.01 to 3115.22 "is vested in any trial court of record." Undeniably, the trial court below is a court of record.

R.C. 3115.21 delineates the nature and scope of reciprocal support hearings:

"(A) In any hearing under this chapter, the court is bound by the rules of evidence that bind the juvenile courts. If the action is based on a support order issued by another court, a certified copy of the order shall be received as evidence of the duty of support, subject only to any defenses available to an obligor with respect to paternity or to a defendant in an action or proceeding to enforce a foreign money judgment. The determination of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court.

"(B) In an action under this chapter, after providing notice and holding a hearing, the court may impound funds that are paid to the court by the obligor in accordance with the support order upon which the action is based. The impoundment of funds is authorized only if the obligor submits proof and the court finds that the obligor has been continuously or repeatedly prevented by the person having custody of a child for whom the obligor owes a duty of support, as established by a support order, from exercising a right of visitation, as established by court order, with respect to the child.

"(C) In an action under this chapter, after providing notice and holding a hearing, if a court finds that an obligor owes a duty of support to an obligee pursuant to a support order, and the obligor has willfully failed to provide such support after having been found financially able to provide such support, the court may suspend any right to visitation possessed by the obligor of the support order until the court is satisfied that the support has been, or will be, provided."

Subsection (B) clearly authorizes the trial court to hear appellant's evidence regarding the denial of visitation. This subsection also confers authority on the trial court to withhold appellant's support payments from appellee pending her compliance with the visitation rights previously granted. Thus, the trial court's finding that it lacked jurisdiction and authority over appellant's visitation claim is erroneous.

This assignment of error is well-taken.

Accordingly, the order of the court vacating its August 30 judgment is reversed, and the cause is remanded to the court of common pleas for further proceedings consistent with this entry.

*Judgment reversed*
*and cause remanded.*

JACKSON, P.J., and PATTON, J., concur.

ONE GREENSTREET, INC., D.B.A. CANADIAN PACIFIC EQUILEASE ET AL., APPELLANTS, *v.* FIRST NATIONAL BANK OF DAYTON ET AL., APPELLEES.

(No. 8192—Decided February 22, 1984.)

*William D. Meily,* for appellants.

*Ray A. Cox,* for appellee First National Bank.

*Richard G. Snell,* for appellee Truck Center of Dayton.

ZIEGEL, J. This lawsuit revolves around a 1966 White Freightliner tractor/truck. In October 1976, appellee Truck Center of Dayton, Inc. (hereinafter "Truck Center"), then known as Dayton White Trucks, Inc., sued appellant, One Greenstreet, Inc. (herein-after "Greenstreet"), and others to recover damages for repairs performed on the White truck, this action being common pleas court case No. 76-2101. There was also pending another suit brought by Greenstreet against parties not involved in the present action, being case No. 77-223, and these two cases were consolidated. Before trial, case No. 77-223 was settled, whereby title to the White truck was granted to Greenstreet, subject to a lien of the Third National Bank. Pursuant to the court order issued in case No. 77-223, with the unauthorized assistance of the Miami County Sheriff, Greenstreet on October 27, 1978 took possession of the truck, which had been in the possession of Truck Center since it had been brought in for repairs in 1976. Although the court order in case No. 77-223 conferred title upon Greenstreet, it was silent as to the right of possession.

When the judgment was rendered in case No. 76-2101, it was determined that Truck Center was entitled to the possession of the White truck until its repair bill in the determined amount of $3,548.18 plus interest was paid, and thereupon Truck Center obtained possession of the truck.

Thereafter, on July 26, 1979, appellee First National Bank became involved with the White truck when Greenstreet gave First National a security interest in the White truck for a loan of $12,000. First National was not apprised of the fact that Greenstreet was not in possession of the White truck, or that Truck Center was entitled to its possession. First National learned this on August 20, 1979, when Truck Center sent a notice to lienholders that it proposed to obtain title to the White truck pursuant to R.C. 4505.101 if the repair bill and storage bill were not paid

within thirty days. After an appropriate lapse of time Truck Center did obtain a title to the White truck without objection from any of the parties, and subsequently sold the truck for an amount less than its artisan's lien.