OPINION
This appeal arises out of a trial court judgment overruling Appellant's Civ.R. 60 (B) (5) motion for relief from judgment and request for DNA testing to determine paternity. For the following reasons, this Court affirms the trial court judgment.
On March 11, 1988, Appellee, Jacqueline Scott, through the Monroe County Child Support Enforcement Agency (hereinafter MCCSEA), filed a complaint against Appellant, David Willey, requesting that paternity be established between Appellant and the minor child Jennifer Nicole Scott, born October 16, 1983. On March 30, 1988, Appellant through his attorney answered the complaint.
On April 12, 1988, the parties entered into an agreed entry regarding the paternity action which the court approved. In the entry, the parties agreed that paternity would be settled through the use of Human Leukocyte Antigen (HLA) testing. The entry indicated that both parties were freely entering into the agreement after being informed of legal alternatives, the test procedure and the consequences of the HLA results.
In the relevant part of the April 12, 1988 entry, the parties agreed that if the results of the HLA testing indicated a probability of paternity of 90% or greater or that matching antigens would exist in 10% or less of the population, Appellant would "change his plea to guilty" and pay the costs of the HLA testing. The parties also agreed that a hearing to determine child support would be held twenty-eight days after the test results were received if the results indicated a 90% or greater probability of paternity. Other stipulations were made if the testing results revealed a less than 90% probability of paternity. All parties, including Appellant and his counsel signed the agreed entry.
On June 15, 1988, Appellee filed the results of the HLA testing which indicated a probability of paternity of 91.41% between Appellant and the minor child. On July 6, 1988, the parties signed and the court approved an entry stipulating that the test results revealed a probability of paternity of 91.41% and that consequently, Appellant agreed to pay the costs of the HLA testing.
On August 31, 1988, the parties filed and the court approved an entry agreeing that Appellant would pay $50.00 per month plus poundage as child support through MCCSEA. The entry also stated that Appellant would have liberal visitation with his daughter.
On October 14, 1988, MCCSEA filed a motion for contempt, imprisonment and lump sum judgment against Appellant for failure to keep his child support obligation current and failing to pay the costs of the paternity testing. The motion was set for hearing.
On November 2, 1988, Appellant's attorney filed a motion to withdraw indicating that his client wanted to represent himself at the contempt hearing. The court approved the motion to withdraw on the same date. The court held the hearing and found Appellant in contempt for a child support arrearage of $774.09. The court sentenced Appellant to ten days in jail but suspended the jail sentence and placed him on probation on the condition that he pay $100.00 per month on the arrearage and pay his current child support monthly obligation of $50.00 per month. Various modifications in child support occurred and MCCSEA continued to conduct administrative reviews on the case.
On March 21, 1997, some nine years after the agreed entry and the HLA testing, Appellant, through new counsel, filed a Civ.R. 60 (B) (5) motion for relief from judgment. In the motion, Appellant conceded his 1988 admission to paternity based upon the HLA testing results, but argued this test showed a relatively low probability of paternity at 91.41%. Appellant also argued that while he admitted paternity, he may have had a valid argument regarding paternity and raised the inference of ineffective assistance of counsel based on his allegations that the attorney who represented him at the time of the agreement was now serving a life sentence for the aggravated murder of his spouse. Appellant requested DNA testing in the matter and asserted that the interests of justice required such a test to be conducted.
On May 7, 1997, the trial court held the hearing on Appellant's motion for relief from judgment. Counsel for Appellant indicated that they were relying on Civ.R. 60 (B) (5) to justify the requested relief and Appellant testified on his own behalf. On the stand, Appellant testified that he received inadequate representation by his former counsel who was now serving a life sentence. (Tr. p. 11, 15). Appellant indicated that after the HLA results revealed a 91.41% probability of paternity, his counsel told him that he was automatically considered the father. (Tr. p. 11). Appellant also explained that he waited nine years to bring the Civ.R. 60 (B) (5) motion because he was recently watching television and learned that through the use of new technology, litigants in his position can now determine paternity through deoxyribonucleic acid (DNA) testing at a 99.9% probability of paternity. (Tr. p. 12). Appellant further testified that he began checking on paternity probability ratios to establish paternity and learned that two other counties at the time of his 1988 agreement required results 95% or greater for probability of paternity or the person was excluded. (Tr. p. 12). Appellant acknowledged that DNA testing was not available in Monroe County in 1988. (Tr. p. 14).
On cross-examination, Appellant testified that despite his assertion that he received ineffective assistance of counsel, he did not file a malpractice action against his attorney. (Tr. p. 15). Appellant also indicated that he signed the agreed entry in 1988 based upon his attorney's representation that 91.41% automatically determined him as the father. Appellant stated that it was in everyone's best interests, including the minor child's, to have DNA testing and that minimal negative implications would result to the child. (Tr. p. 21).
MCCSEA called its witnesses. An investigator from MCCSEA testified that HLA testing was conducted in the past but current testing utilized DNA. (Tr. pp. 23-24). The investigator also indicated chat DNA testing has generally been available since 1987 but that MCCSEA did not start using it until 1992 or 1993. (Tr. p. 26). She also testified that she had recently conducted an administrative review of Appellant's child support obligation and that it was recommended that Appellant's child support obligation increase from $168.00 per month to $388.00 per month and that the review started before Appellant filed his motion for relief from judgment. (Tr. pp. 24-25). Appellee also testified. The parties submitted post hearing memoranda on the motion.
On May 19, 1997, the juvenile court filed an entry overruling Appellant's Civ.R. 60 (B) (5) motion for relief from judgment. The court found that Appellant was represented by counsel at the 1988 agreed entry, that Appellant voluntarily entered into the agreed entry and signed the entry with his attorney, and that thereafter Appellant acknowledged paternity and began paying an agreed amount of child support. The court based its decision to overrule the motion on the Ohio Supreme Court's decision inStrack v. Pelton (1994), 70 Ohio St.3d 172 which stressed the importance of finality over perfection in lawsuits and disputes involving parentage and child support. On June 11, 1997, the juvenile court adopted the MCCSEA administrative review of child support and ordered that Appellant's child support obligation be modified to $388.62 as no objections to the review were filed.
On June 18, 1997, Appellant filed the instant appeal raising the following assignments of error:
 "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION FOR DNA TESTING.
 "THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO VACATE THE JUDGMENT OF PATERNITY UNDER CIVIL RULE 60 (B)."
Since both assignments of error involve the overruling of the Civ.R. 60 (B) (5) motion, we shall address them together. Civ.R. 60 (B) provides:
 "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59 (B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under subdivision (B) does not affect the finality of a judgment or suspend its operation."
To prevail on a Civ.R. 60 (B) motion for relief from judgment, the movant must establish that:
 "* * * (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60 (B) (1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60 (B) (1), (2), or (3), not more than one year after the judgment, order or proceeding was entered or taken."
GTE Automatic Elec. v. ARC Industries, Inc. (1976), 47 Ohio St.2d 146,150. In order to prevail, all three of these requirements must be met. Id. at 151.
This Court reviews the decision regarding a Civ.R. 60 (B) motion under an abuse of discretion standard. State ex rel.Richard v. Seidner (1996), 76 Ohio St.3d 149, 151, citing RoseChevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 20. An abuse of discretion "* * * connotes more than an error of law or judgment; it implies an attitude that is `unreasonable, arbitrary or unconscionable.'" Watson v. Wolsonovich (1996), 112 Ohio App.3d 565,569, quoting Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
In Caruso-Ciresi, Inc. v. Lohman (1983), 5 Ohio St.3d 64, 66, the Ohio Supreme Court described Civ.R. 60 (B) (5) as a "catch-all provision reflecting the inherent power of a court to relieve a person from the unjust operation of a judgment. However, a movant must show substantial grounds to invoke this provision. Id., citing Staff Note to Civ.R. 60 (B); Adomeit v.Baltimore (1974), 39 Ohio App.2d 97, 105. We find that the trial court did not abuse its discretion in overruling Appellant's motion as Appellant failed to show substantial grounds that he was entitled to relief and failed to file his motion within a reasonable time.
Appellant first argues that the HLA results indicating a 91.41% probability of paternity were low and thus insufficient to establish a father-child relationship. Appellant asserts that the more recent development of DNA testing is more reliable than HLA and that therefore he should be able to redetermine paternity by DNA testing.
We find this argument insufficient to show substantial grounds to invoke relief under a Civ.R. 60 (B) (5) motion. At the time Appellant signed the agreed entries, HLA testing was recognized and accepted as reliable, accurate and relevant evidence and the Ohio Supreme Court had held that HLA testing was relevant evidence even * * * prior to the enactment of R.C. 3111.09 and3111.10, which now permit the admission of HLA test results to establish the probability of paternity." Owens v. Bell (1983),6 Ohio St.3d 46, 53. While a 91.41% probability may not be the 99% accuracy at which DNA testing can now determine paternity, HLA was the common form of testing in Monroe County until 1992 or 1993 and was considered to be the advanced technology of the time. (Tr. p. 23, 26).
Further, testimony established that DNA testing became commercially available in Monroe County in 1987 and Monroe County Child Support Enforcement Agency began using DNA and stopped using HLA in 1992 or 1993. (Tr. p. 24-25). While Appellant argues that he only discovered the existence of DNA testing in 1996 after watching television, this does not warrant a reversal here. The time limits of a Civ.R. 60 (B) motion apply to the time commencing with the filing of the judgment, not from when the movant discovers information. Strack v. Pelton (1994), 70 Ohio St.3d 172,175. Civ.R. 60 (B) (5) requires the motion to be made within a reasonable time after judgment. We find Appellant's Civ.R. 60 (B) (5) motion to be untimely, as it was filed almost nine years after the judgment and, conservatively, at least four years after DNA testing was available in Monroe County.
In Strack v. Pelton, Strack filed a Civ.R. 60 (B) (4) and (5) motion nine years after he had been judicially declared the father of a child. Strack possessed, at the time of his challenge, genetic test results excluding him as the father. The Ohio Supreme Court upheld the denial of the motion finding it untimely because the type of genetic testing Strack submitted with his motion was available five years after Strack was declared the father, yet he waited four years beyond that time to file his motion. Id. at 175. The Court's decision is based on the date when the scientific evidence became available to Strack and not when he decided to take advantage of the test. Id.
Additionally, a judgment entered by consent "* * * is an adjudication as effective as if the merits had been litigated and remains, therefore, just as enforceable as any other validly entered judgment." In re Gilbraith (1987), 32 Ohio St.3d 127,129, citing Sponseller v. Sponseller (1924), 110 Ohio St. 395,399. The Ohio Supreme Court held in Volodkevich v. Volodkevich,
"[t]he Rules of Civil Procedure do not invite a party to take a chance on a decision in the hope that a second bite is available if the outcome proves disappointing." (1988), 35 Ohio St.3d 152,155.
In the instant case, the April 12, 1988 agreed entry signed before the HLA testing occurred is dispositive of the fact that Appellant consented to HLA testing and agreed that if the results showed a probability of paternity of 90% or greater, he would admit paternity and undertake a child support obligation. The first paragraph of the consent entry signed by the parties with the advice of counsel and approved by the court explains that the parties had agreed to settle paternity by the HLA test and had been fully advised of their rights and possible legal alternatives. Appellant signed the entry along with his attorney. After the test results revealed a 91.41% probability of paternity, Appellant concedes that he signed another agreed entry establishing paternity. (Appellant's Br., p. 1). Appellant further admits that he signed yet another agreement this time to pay child support, on August 31, 1988. (Appellant's Br., p. 1).
Appellant did not challenge the existence of a father-child relationship when the HLA testing results came back revealing a 91.41% probability of paternity. Appellant waited nine years to challenge paternity. He waited until his child support obligation was under review for a modification based upon his new employment at a higher income level. We will not allow Appellant a "second bite" to challenge the paternity that he agreed to and failed to challenge for nine years. To allow every party who signs an agreement regarding paternity to challenge that agreement every time technological advancements are made would have resulting ramifications that would destroy the sanctity of agreements, the finality of judgments, and create a tremendous strain on the courts from duplication. This does not even begin to consider the effects such a ruling would have on the children these agreements are supposed to protect. Consent agreements are just as enforceable and determinative as a judgment and should be enforced as such.
Appellant also alleges that his former attorney misrepresented to him that the HLA results automatically deemed him the father and that he should sign the agreed entry admitting paternity. We find this argument meritless. First, Appellant provides no proof of these factual allegations of misrepresentation. Unsworn factual allegations in a Civ.R. 60 (B) motion are insufficient evidence upon which to vacate a judgment. Sperry v. Hlutke
(1984), 19 Ohio App.3d 156, 159. Further, before the HLA testing, Appellant signed an agreed entry consenting to the testing and stipulating to the percentage upon which he would admit paternity. The April 12, 1988 entry states that Appellant was informed of the consequences of HLA results and legal alternatives of the testing. Nevertheless, Appellant agreed to the stipulations when he signed the entry. He further agreed to the results of the HLA testing and agreed to pay child support.
We also reject Appellant's implication that his former attorney's alleged conviction and incarceration, an event that occurred almost ten years after his representation of Appellant, has any bearing on the attorney's ability and competency to represent Appellant in 1988. No proof was submitted on this issue. Further, in Ohio, a properly licensed attorney is presumed competent. State v. Smith (1985), 17 Ohio St.3d 98, 100, citingVaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301. In 1988, Appellant's retained counsel was a properly licensed attorney and thus presumed competent at that time.
We also find that the lower court did not abuse its discretion in denying Appellant's motion for relief and request for DNA testing based upon the Ohio Supreme Court's holding in Strack v.Pelton (1994), 70 Ohio St.3d 172. The instant case is distinguishable from Strack in that Mr. Strack already had evidence that he was not the father when he filed his challenge to paternity. While the facts of Strack were more compelling for granting a Civ.R. 60 (B) motion, the Ohio Supreme Court upheld denial of the appellant's motion as untimely. We find the Ohio Supreme Court's discussion of finality over perfection applicable to this case. In Strack, the Ohio Supreme Court held that:
 "We are not unaware that our decision in effect declares as static a state of facts that reliable scientific evidence contradicts. Nonetheless, there are compelling reasons that support such a decision. A claim under Civ.R. 60 (B) requires the court to carefully consider the two conflicting principles of finality and perfection. In Knapp v. Knapp (1986), 24 Ohio St.3d 141, 144-145, this court declared, `[F]inality requires that there be some end to every lawsuit, thus producing certainty in the law and public confidence in the system's ability to resolve disputes. Perfection requires that every case be litigated until a perfect result is achieved. For obvious reasons, courts have typically placed finality above perfection in the hierarchy of values.' Finality is particularly compelling in a case involving determinations of parentage, visitation and support of a minor child."
Id., 70 Ohio St.3d at 175.
In the instant matter, Appellant had numerous opportunities over nine years to contest that he was father of the minor child. HLA testing was reliable in 1988 and considered to be the most accurate test of the time. Appellant, with the assistance of counsel, consented to the probability of paternity percentage prior to submitting to testing and after being informed of the consequences of the testing results and other legal alternatives. Appellant subsequently agreed to the testing results and agreed to a child support obligation. Now, nine years later, Appellant wishes to invalidate his agreements coincidental to a review for an increase in his child support obligation. Finality should reign in this particular case not only because of a lack of substantial grounds for filing a Civ.R. 60 (B) (5) motion but also because the motion was filed untimely.
In Sherrill v. Harroff (Nov. 3, 1998), Columbiana App. No. 96-CO-36, unreported, this Court reversed the trial court's If overruling of a Civ.R. 60 (B) motion for relief from an agreement between the parties that the appellant was the father of the child. In Sherrill, the appellant had scientific evidence excluding him as the father of the child five years after he originally acknowledged paternity without genetic testing. We found under that fact pattern that the appellant may have a meritorious defense or claim under Civ.R. 60 (B) (4) and remanded the case for an evidentiary hearing to determine if relief was warranted.
The instant case is distinguishable from Sherrill. We find relief unwarranted under Civ.R. 60 (B) (5) because, as discussed, substantial grounds were not presented to establish such relief and the motion was filed untimely. Further, Appellant presented no evidence establishing that he was not the father of the minor child and in fact agreed to HLA testing and agreed to the establishment of paternity based upon a 90% or greater showing of probability of paternity. Appellant had counsel and was informed of the consequences of the testing results, his agreement and other legal alternatives. The results of the HLA testing revealed a 91.41% probability of paternity and Appellant accepted those results.
For the foregoing reasons, we find that the assignments of error advanced by Appellant are without merit. Accordingly, the trial court judgment is affirmed.
Cox, P.J., concurs.
Donofrio, J., concurs.
 APPROVED: ____________________________________ CHERYL L. WAITE, JUDGE