OPINION
Plaintiff-appellant, Larry Pitzer, Sr., appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, to set aside and vacate a prior divorce decree and issue a new divorce decree reallocating assets and liabilities and awarding spousal support.
The parties, Larry Pitzer, Sr., and M. Cheryl Pitzer, were married on August 23, 1965.
At the time of marriage, appellant was nineteen and appellee was sixteen years of age. Appellee was a homemaker during the marriage. She has an eighth grade education. There were two children born as issue of the marriage, both of whom are now emancipated.
Appellant worked during the entire marriage and was the sole source of support for the family. Appellant was injured in 1991 in the course of his employment from inhaling paint and other chemicals at the workplace. As a result, appellant has an organic brain disorder. Appellant has not been employed since then.
Appellant receives $481.90 biweekly as a result of a Workers' Compensation claim. Appellant also receives Social Security benefits in the amount of $607 monthly. Appellant's total monthly income is $1,651. None of appellant's income is taxable income.
Appellee worked some clerical and part-time jobs after appellant was injured in 1991. In 1993, appellee began working full-time for her sister as a florist to provide medical insurance coverage for the parties. Appellee remained at that job for three years before she "quit her job because [appellant] continually called her at work and was abusive on the phone." Appellant occasionally followed her to work. Appellant did not allow appellee to obtain a driver's license during the marriage. Appellee obtained a driver's license when she was thirty years old, a fact that she kept hidden from appellant for fear of his "wrath." Appellant bought appellee a car for their twenty-fifth wedding anniversary and later said "it was the worst thing he ever did."
Appellee is not presently employed. She testified she is presently suffering from erythema nodosa, which causes painful large red knots on her skin. Appellee testified her physical condition was not the reason she terminated her employment. Appellee testified she has not been able to work because she has been too emotionally distraught over the divorce and abuse by appellant.
Appellant filed for divorce on April 18, 1996. On September 11, 1996, there was a final hearing in this matter and the parties, both present with counsel, entered into an agreement as to the distribution of assets and liabilities. On October 22, 1996, the trial court issued a divorce decree which included a division of marital property. There was no provision for spousal support. Following the decree, personal property was exchanged and divided.
After the parties' divorce, appellant had a relationship with another woman and they were married. That marriage also ended with a divorce.
Subsequently appellant and appellee attempted a reconciliation and were remarried on July 25, 1997. A new complaint for divorce was filed by appellant on September 16, 1997. On October 22, 1997, appellee filed a Civ.R. 60(B) motion for relief from judgment seeking to set aside and vacate the prior divorce judgment of October 22, 1996. Civ.R. 6 states "in computing any period of time prescribed or allowed by these rules, * * *, the date of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included." Therefore, the Civ.R. 60(B) motion was timely filed. On August 11, 1998, appellee's motion to set aside the divorce decree was granted.
The decision of a magistrate granting a new divorce was filed on September 7, 1999, and the trial court judge approved the decision of the magistrate. Appellant filed objections to the magistrate's decision. These objections were denied, and the new decree of divorce was issued on December 12, 1999. The new decree of divorce contains a division of marital property different from the original divorce decree, and spousal support was also awarded. Appellant appeals, raising four assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN SETTING ASIDE AND VACATING THE DECREE OF DIVORCE FILED ON OR ABOUT OCTOBER 22, 1996.
 On October 22, 1996, the trial court issued the original decree of divorce, settlement agreement, and property division. Appellant argues that the settlement agreement and property division were final judgments, and the court lost jurisdiction to modify the decree once the appeal time had lapsed. A postnuptial agreement for separation including a division of property and a property settlement is ordinarily an executed agreement not revoked by reconciliation and resumption of the marital relationship alone, and where it contains an executed division of property, it can be revoked only by clear agreement and intention between the parties that it shall be so revoked. Lucas v. Lucas (1938), 26 Ohio Law Abs. 664, 667. Therefore, appellant argues the judgments should not have been modified.
The decision to grant or deny relief from judgment under Civ.R. 60(B) is committed to the sound discretion of the trial court and, absent an abuse of discretion, will not be reversed on appeal. Adomeit v.Baltimore (1974), 39 Ohio App.2d 97, 103. The term "abuse of discretion" requires more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v.Clark (1994), 71 Ohio St.3d 466, 470.
Recent Ohio appellate cases have expressed the view that Civ.R. 60(B) provides "the exclusive grounds which must be present and the procedure which must be followed in order for a court to vacate its own judgment."Cale Products, Inc. v. Orrville (1982), 8 Ohio App.3d 375, 378, quotingMcCue v. Insurance Co. (1979), 61 Ohio App.2d 101. In order to prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that:
 (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgement, order or proceeding was entered or taken.
 GTE Automatic Electric, Inc. v. ARC Industries, Inc. (1976), 47 Ohio St.2d 146, 150-151.
Appellee claimed in her Civ.R. 60(B) motion that the assets and debts of the parties were not divided equally, therefore the division of assets and debts was inequitable. Appellee also claimed she was entitled to relief based on her husband's misconduct in obtaining her agreement to the terms of the divorce decree. In pertinent part Civ.R. 60(B) states:
 the court may relieve a party * * * from a final judgement, for the following reasons: * * * (3) Fraud, * * * misrepresentation, or other misconduct of an adverse party. * * * The motions shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than on year after the judgment, order or proceeding was entered or taken.
 The magistrate's findings of fact in the decision granting appellee's Civ.R. 60(B) motion indicate that physical altercations took place on a constant basis between appellant and appellee. Appellant would call appellee names such as "bitch, witch and whore." The parties separated on April 15, 1996, when appellee came home to find her clothing outside the front door and the locks changed. Appellant would call appellee at her work first thing in the morning to make sure she was at work. Then appellant would call several times during the day to make sure she was still there. Appellant would verbally abuse appellee on the phone to such an extent that she would avoid going home. Appellant would not allow appellee to use the parties' bank accounts.
Appellee's testimony regarding the harassment and abuse from appellant was verified by appellee's sister, Sharon Kiser, with whom appellee worked at the florist shop. The harassment was also verified by another co-worker, Judy Harness, and by appellee's daughter-in-law, Natonya Pitzer.
Appellee sought medical treatment to address her emotional and mental state. Appellee's doctor, Dr. Dietz, D.O., stated that appellee had "acute anxiety and depression, stemming from her relationship with her husband."
Further, after reviewing the original divorce decree, the magistrate's findings of fact indicate appellant received "between $90,000 and $104,000 in assets and [appellee] received $22,820 in assets." There was no testimony presented to indicate the reason for such an unequal division of property. Moreover, appellee received no spousal support in the original divorce decree, even though the parties were married more than thirty years and appellee did not work during the marriage except for the last three years.
Based on the evidence, the magistrate found appellant's conduct toward appellee was "so harassing and abusive that [appellee] was not capable of making a rational decision about the distribution of assets and liabilities." Consequently, the magistrate determined that pursuant toGTE Automatic Electric, Inc. v. ARC Industries, Inc., appellee "has met her burden in requesting relief from the Decree of Divorce." Furthermore, the magistrate found appellee was "entitled to an equal division of the assets and liabilities of the marriage, that [appellee] has a claim for spousal support, and, therefore, [appellee] has a meritorious claim to present." The decision of the magistrate was approved and adopted by the trial court judge pursuant to Civ.R. 53.
Even though a postnuptial agreement for separation that includes a division of property and a property settlement can ordinarily only be revoked by clear agreement and intention between the parties, the facts support a finding that appellee entered into the divorce decree without proper knowledge or consent. Further, the record shows that appellant exercised fraud, duress or undue influence over appellee, and that the terms of the settlement were inequitable.
Accordingly, we conclude that the trial court did not abuse its discretion when it ruled that appellee met the three-part test for granting a motion to vacate a judgment under Civ.R. 60(B). We find that the trial court did not act unreasonably, arbitrarily or unconscionably in setting aside and vacating the decree of divorce filed on October 22, 1996. Therefore, the first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ITS AWARD OF SPOUSAL SUPPORT.
 As part of a divorce proceeding, "a trial court has equitable authority to divide and distribute the marital estate, and then consider whether an award of sustenance alimony would be appropriate." Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67, quoting Holcomb v. Holcomb (1989), 44 Ohio St.3d 128. A trial court's award of spousal support will not be disturbed absent an abuse of discretion. Id. Courts in this state derive their power to award spousal support from statutes. R.C. 3105.18(A) and (B) provide a trial court with guidelines for determining whether spousal support is necessary and the nature, amount and manner of spousal support payments. Wolfe v. Wolfe (1976), 46 Ohio St.2d 399, 414.
The trial court is given wide latitude in determining the amount of spousal support to be awarded, so long as the trial court properly considers the statutory factors of R.C. 3105.18.[1] Likewise, the trial court is vested with broad discretion in deciding what is equitable upon the facts and circumstances of each case, although such discretion is not unlimited. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355.
In making a spousal support determination, the trial court must examine evidence germane to all factors relevant to the case, then weigh one spouse's need for support against the other spouse's ability to pay.Carnahan v. Carnahan (1997), 118 Ohio App.3d 393, 399; Layne v. Layne
(1992), 83 Ohio App.3d 559, 562-563. A reviewing court should measure the trial court's adherence to the test, but should not substitute its judgement for that of the trier of fact unless, considering the totality of the circumstances, it finds that the court abused its discretion.Holcomb, 44 Ohio St.3d at 131.
In this case, the trial court judge adopted and approved the magistrate's findings of fact that determined appellee is capable of earning a minimum wage in the amount of $10,700 annually, which would be a monthly net income in the amount of approximately $850. Appellee's monthly expenses are $1,528. Based on factors set forth in R.C.3105.18(C), including the history of the parties' nearly thirty-four year marriage and their relationship, both parties' incomes, appellant's ability to pay spousal support and appellee's need for financial assistance, the trial court found it appropriate to order spousal support in the amount of $480 monthly.
In its decision, the trial court states that the spousal support award was made upon consideration of the factors of R.C. 3105.18(C). When a trial court indicates that it has reviewed the appropriate statutory factors, there is a strong presumption that the factors were indeed considered. Babka v. Babka (1992), 83 Ohio App.3d 428, 435. In addition, the trial court made numerous findings of fact in determining spousal support was appropriate, and in its calculation of the amount of spousal support. For example the trial court noted that appellant's income was $1,651 per month, tax free, while appellee's income was approximately $850 per month. The parties were married nearly thirty-four years and appellee had been a homemaker nearly the entire thirty-four years. Based on the presumption that the trial court considered the statutory factors, the detail of the trial court's decision and our review of the record, we do not find that the trial court acted unreasonably, arbitrarily or unconscionably in its award of spousal support to appellee. Therefore, the second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ITS DIVISION OF PROPERTY ASSTES [sic] AND ITS FAILURE TO INCLUDE AND CONSIDER ALL THE DEBTS AND LIABILITIES.
 All marital property is required to be divided equitably between the parties. Marital property is presumed to mean any property acquired "during the marriage." See R.C. 3105.171(A). The term "during the marriage" is presumed to mean that period of time from the date of marriage through the date of the final hearing. See R.C. 3105.171(A). There are no factors in this case to rebut that presumption. Therefore, the magistrate concluded for purposes of the property division, the term during the marriage "shall mean from August 23, 1965, through July 14, 1999."
R.C. 3105.171(B) requires that in any divorce, the trial court must determine what constitutes marital property and what constitutes separate property. The classification of property as separate or marital is reviewed according to the manifest weight of the evidence. Johnson v.Johnson (Sept. 27, 1999), Warren App. No. CA99-01-001, unreported, at 7. Under such review, the factual findings of the trial court relating to classification of property as marital or separate are reviewed to determine whether they are supported by competent, credible evidence.Barkley v. Barkley (1997), 119 Ohio App.3d 155; Dever v. Dever (Apr. 12, 1999), Clermont App. No. CA98-07-050, unreported. Once the property is classified, the trial court retains broad discretion to effect an equitable and fair division. Cherry, 66 Ohio St.2d at paragraph two of the syllabus.
The mortgage on the marital residence caused the greatest part of the discrepancy in the allocation of assets. On March 28, 1996, the parties refinanced the mortgage on their home for $72,250. The parties paid off some debts with this money. There remained $27,302 cash from the refinancing which appellant retained. As a result of a court order, appellant is credited with paying appellee $7,500 from that remaining cash. After deductions, appellant retains a $19,800 credit and appellee retains a $7,500 credit in the original divorce decree from the cash remaining following the refinancing of the marital residence.
In determining the division of property, the court specifically considered the parties' real estate holdings, household goods, automobiles, bank accounts, pensions, 401(K) plans, stocks, bonds, life insurance policies, tax refunds, workers' compensations claims, debts, a contempt motion, and attorney fees.
The debts and liabilities that appellant specifically claims the court did not consider include: (1) appellant being credited for a $1200 401(K) plan where only $200 was in the account; (2) appellant being credited for a $6,000 Workers' Compensation VSSR award when appellant only received $4,000; and (3) deterioration to the marital property by appellee which resulted in a thirteen percent devaluation of the property. In addition, appellant claims he should not have been required to contribute toward appellee's attorney fees.
Each of appellant's contentions was specifically addressed in the September 7, 1999, decision issued by the magistrate and approved by the trial court judge. Appellant testified that the 401(K) plan was cashed in when he terminated employment in 1991. However, the magistrate found as of August 22, 1996, there was still a balance in the amount of $1,207 in the account. Therefore, appellant was credited with that balance.
The trial court determined the appellee was not entitled to any portion of the VSSR award appellant claims was miscalculated because the VSSR award is "similar to a pain and suffering award in a personal injury case". Thus, the sum appellant received is irrelevant to the settlement since it was viewed as separate property by the trial court.
As for devaluation of the marital property, the magistrate found that "although appellee did not pay the mortgage payments for June or July [leaving a deficiency balance of $1,165.22 at closing], there was no statement from the mortgage company indicating what the balance would have been if the payments would have been made, i.e., the payoff balance would not necessarily have been reduced by the exact amount of the payments." In order to effect an equitable and fair division of property, appellee was awarded the proceeds from the sale of the residence free and clear of any claim of appellant. Therefore, the court would "not consider a set off" to appellant for the unpaid mortgage.
Appellee was awarded attorney fees because the court found appellant "in contempt for violating the temporary restraining order" and other court orders in this matter. Based on the history in this case the court found it reasonable to award appellee attorney fees.
Thus, it is apparent that the trial court did include and consider all the debts and liabilities of the parties in its division of property assets. There is competent, credible evidence to support the findings and we do not find that the trial court acted unreasonably, arbitrarily or unconscionably. Therefore, the third assignment of error is overruled.
Assignment of Error No. 4:
 THE TRIAL COURT FAILED TO SANCTION AND/OR PANIZE [sic] APPELLEE FOR HER ACTIONS DURING THE COURSE OF THE PROCEEDING.
 Appellant argues that "the fair market value of the marital residence was $100,000" at the time appellee was awarded occupancy of the marital residence subsequent to the August 11, 1998, magistrate's decision. Yet on the April 18, 1996 property statement in the initial divorce, the "appraisal/market value" of the marital residence is stated by appellant to be $85,500. Appellant claims that the value of the property was lessened considerably during the time the appellee had sole occupancy of the property because appellee did not make the monthly mortgage payments for June and July of 1999. Appellant also argues the property value was lessened because of appellee's "lack of cooperation in the sale of the property." Appellant claims appellee's actions constituted misconduct and violated a court order not to commit any waste or damage to the property. Appellant maintains appellee was essentially rewarded for her misconduct when no sanctions were imposed.
The marital residence sold for approximately $87,500. Following a payment of the mortgage obligation of approximately $72,000 and closing costs of $4,925 assessed to the sellers, the net proceeds of the sale of the marital residence were $10,487.77.
As stated earlier, the decision to grant or deny relief from judgment under Civ.R. 60(B) is committed to the sound discretion of the trial court and, absent an abuse of discretion, will not be reversed on appeal. Adomeit, 39 Ohio App.2d at 103. The magistrate found that although appellee did not pay "the mortgage payments for June or July, there was no statement from the mortgage company indicating what the balance would have been if the payments were made." Thus, the trial court did "not consider a set off to [appellant] for the unpaid mortgage amount" because, in order to effect an equitable and fair division of property, appellee was awarded the entire proceeds from the sale of the residence free and clear of any claim of appellant.
Based on the evidence, the court did not act unreasonably, arbitrarily or unconscionably by not penalizing appellee for any diminution in value of the marital residence. Therefore, the fourth assignment of error is overruled.
WALSH and KERNS, JJ., concur.
Kerns, J., retired, of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.
[1] R.C. 3105.18(C)(1) states: "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
(a) The income of the parties, from all sources * * *;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for * * * custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, * * *;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree * * *;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.