EMERY, n.k.a. Merrill, Appellee,

v.

EMERY, Appellant.■

[Cite as *Emery v. Emery* (1995), 101 Ohio App.3d 559.]

Court of Appeals of Ohio,
Twelfth District, Brown County.

No. CA94–06–006.

Decided March 6, 1995.

*Joseph M. Worley,* for appellee.

*Armin Frank,* for appellant.

WILLIAM W. YOUNG, Judge.

Defendant-appellant, Thomas Ray Emery, married plaintiff-appellee, Debbie Emery, n.k.a. Merrill, on August 22, 1976. At the time, she was pregnant with a child now known as Melanie Merrill. Appellee filed for divorce on March 8, 1977, in the Brown County Court of Common Pleas, Domestic Relations Division. Appellant withdrew his answer to the divorce complaint at trial on November 25, 1977. He did not contest his paternity of Melanie.

The trial court issued a divorce decree on January 31, 1978, and held that the child was born issue of the marriage. The court ordered appellant to pay child support. Shortly thereafter, appellant moved to California and resided outside Ohio through February 1993. Appellee filed a motion for contempt against appellant with the Brown County Court in 1993. After a hearing, the court issued an entry on June 8, 1993 establishing, among other things, a child support arrearage of $29,560 and appellant's continuing duty to pay child support.

On December 29, 1993, appellant filed a Civ.R. 75(I) motion to invoke the trial court's continuing jurisdiction to modify the terms of the support order. Appellant claimed, in an attached affidavit, that he was not the child's father and he sought court-ordered blood testing. The trial court refused to order the testing, holding that after the sixteen-and-one-half-year delay, appellant was estopped from reopening the paternity question.

Appellant argues under his first assignment of error that the lower court improperly denied his Civ.R. 75(I) motion to invoke the court's jurisdiction. That rule states:

"The continuing jurisdiction of the court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Rules 4 to 4.6. When the continuing jurisdiction of the court is invoked pursuant to this subdivision, the discovery procedures set forth in Rule 26 to 37 shall apply."

Appellant points to this court's decision in *Carson v. Carson* (1989), 62 Ohio App.3d 670, 577 N.E.2d 391. In that case, this court concluded that the trial court retains jurisdiction to modify a child support order under Civ.R. 75(I)

where the child support obligor discovers, after the dissolution or divorce, that he is not the natural father of the child.

The arguments for and against continuing jurisdiction were well laid out in the *Carson* opinion and dissent. The majority reasoned that discovery of nonpaternity amounts to a change in circumstances triggering the court's continuing jurisdiction to modify a support order. The court recognized "the general policy of the law in favor of legitimacy," but concluded that "an overriding policy objective comes into play: ascertainment of the truth." *Id.*, 62 Ohio App.3d at 675, 577 N.E.2d at 394.

The dissenting opinion in *Carson* argued that the obligor, requesting a modification of the dissolution decree, was actually seeking to vacate that portion of the decree which states that his former wife's child was born as issue of the marriage. *Id.* at 677, 577 N.E.2d at 396. Thus, the dissent contended that a previous judgment of paternity could only be challenged through Civ.R. 60(B). *Id.* at 676–677, 577 N.E.2d at 395–396 (Hendrickson, J., dissenting).

In determining whether to revisit a previous finding of paternity, whether through a Civ.R. 60(B) motion or through a motion under Civ.R. 75(I) to modify support based on a change of circumstances, courts face the two conflicting principles of finality and perfection. The Supreme Court, addressing the applicability of Civ.R. 60(B) to set aside a judgment of paternity nine years after the divorce judgment, recently reiterated that courts have typically placed the value of finality above the competing value of perfection; "[f]inality is particularly compelling in a case involving determinations of parentage, visitation and support of minor a child." *Pelton v. Strack* (1994), 70 Ohio St.3d 172, 175, 637 N.E.2d 914, 916.

However, this court still believes that under certain circumstances an obligor's discovery of nonpaternity may constitute a change of circumstances justifying modification of a previous child support order. This may be so even where the obligor may no longer seek relief from the paternity judgment itself under Civ.R. 60(B). Having said that, this court feels obliged to reconsider and limit its holding in *Carson*.

 This court now holds that an obligor's simple assertion, by affidavit or otherwise, that he is not the child support obligee's father is not sufficient to invoke the trial court's continuing jurisdiction to modify its child support order. In this case, appellant chose not to challenge his paternity or seek blood tests during the pendency of his divorce. He should not walk into court now and expect the court to order blood tests sixteen years later. Appellant must bear the burden of demonstrating a change in circumstances; he must come forward

with some evidence that he is not Melanie's father before he may invoke the trial court's jurisdiction.

■ In *Carson*, this court upheld the lower court's decision to reduce the obligor's child support arrearage to zero. We have also reevaluated our position in this regard. We conclude that the court's authority to modify a support order based on evidence of nonpaternity may not be applied retroactively. In other words, where a support obligor demonstrates a change in circumstances based on nonpaternity, the trial court may not disturb an arrearage, but may only modify the obligor's future child support obligations. A mother and child naturally and presumptively rely on an obligor's court-ordered child support; it would be inequitable to allow the obligor to challenge his support obligation retroactively.

In this case, the trial court properly refused to order the blood tests appellant requested. Appellant never came forward with any evidence rebutting the presumption that Melanie is his child. He subsequently ignored his support obligation and allowed a large arrearage to accumulate. Appellant's bald assertion that he is not the father of his former wife's child is insufficient to invoke the lower court's continuing jurisdiction over the child support order. If appellant subsequently comes forward with some evidence of nonpaternity, the lower court may consider modifying his future support payments. However, the court may not reduce his arrearage retroactively. This court's opinion in *Carson* is limited to the extent that it is inconsistent with our holding in the case at bar. Appellant's first assignment of error is accordingly overruled.

Appellant complains under his second assignment of error that the trial court committed procedural and substantive error in denying his requested relief. This assignment is without merit. Appellant's Civ.R. 75(I) motion was supported by an appended affidavit in which appellant claimed he was not Melanie's father. Appellee subsequently filed a response in affidavit format. Appellant claims that when it denied his motion, the trial court effectively converted the pleadings into competing motions for summary judgment. Appellant claims the court lacked authority to *sua sponte* treat a trial brief as a motion for summary judgment. This court fails to see how the lower court's entry denying appellant's motion "converted" the parties' pleadings into competing motions for summary judgment. Appellant's second assignment of error is overruled.

*Judgment affirmed.*

WALSH, P.J., concurs.

KOEHLER, J., concurs in part and dissents in part.

KOEHLER, Judge, concurring in part and dissenting in part.

Appellee herein invoked the trial court's continuing jurisdiction by filing a motion in contempt for appellant's failure to pay child support for sixteen or more years.

The record herein does not disclose the basis for allowing the accumulation of a child support arrearage over such period. One could speculate that appellee proposed to maintain the status quo until such time as a child support agency initiated collection activity which might ultimately inure to appellee's favor. There is no light shed on this question.

Appellant's Civ.R. 75(5) motion is to modify the terms of the support order. As the majority finds the issue of paternity may be a basis to invoke the continuing jurisdiction of the trial, the issue raised could be a material circumstance which would allow appellant to be relieved of the support obligation.

I therefore concur with the majority in determining that the issue of paternity calls for a change of circumstance which triggered the trial court's continuing jurisdiction. Further, the majority holds that such change of circumstance may invoke the continuing jurisdiction of the court even if the obligor no longer seeks to set aside the original decree finding paternity under Civ.R. 60(B). To this point, I concur.

However, the majority's holding limiting *Carson* requires my dissent. While the issue of paternity may cross the threshold of alleging a material change of circumstances, the majority indicates there must be something more than a bald assertion by appellant that he is not the father of the child he was ordered to support.

While finding that something more is required by appellant, it then forecloses appellant from establishing by scientific test that he is not the natural father. I believe the rationale of the majority is flawed.

Whether the issue of paternity is raised forthwith or sixteen years later, it is in the best interest of the child involved to determine by modern testing procedures whether his legal father is in fact his biological father. The dissent in *Carson, supra,* and the decision of the Supreme Court in *Pelton, supra,* considered the issue on the basis of a Civ.R. 60(B) motion, which is not relevant when its issue is raised on the basis of Civ.R. 75(I).

I further disagree with the majority's rollback of the *Carson* decision as it relates to accumulated arrearages. If applicable to this cause, and, in the event the record establishes that appellant was not the father of the unsupported child, he would still be responsible for $29,000 of support arrearages for a child for which he should have had no obligation to support.

While tilting with the windmill of truth versus finality, the majority decides finality outweighs the truth. It is my belief that the truth is of greater importance than finality. On this issue, I support the position of Justice Pfeifer in his dissent in *Pelton* insofar as he opines that "[t]here is no reason for this court to indulge in a legal fiction which forces the parties involved to continue living a lie. [The appellant] should not be refunded any of the payments he made, but should not be forced to continue to pay support where he has no biological or physiological connection with the child." *Id.,* 70 Ohio St.3d at 176, 637 N.E.2d at 917.

It is therefore my conclusion that raising the issue of paternity in a child support issue is a material circumstance which meets the threshold issue, invokes the trial court's continuing jurisdiction, and allows for discovery including HLA testing. If the evidence supports the claim of nonpaternity, the obligor's duty to support must be terminated and arrearages on the support account may be determined to be zero.

This child's knowledge as to her biological parents is too significant to her health and well-being to be adversely affected by a legal fiction. I therefore concur in part and dissent in part.