OPINION
{¶ 1} Appellant, Henry T. Benford, appeals from an order of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, that granted his motion to vacate judgment of parentage and child support, pursuant to Civ.R. 60(B) and R.C. 3111.16, but denied his request to vacate child support arrears appellant owed on behalf of Thomas Benford.
 {¶ 2} The facts indicate that appellant had a relationship with appellee, Germaine Smith (who has not filed a brief in this appeal). In 1992, appellant filed a complaint to establish parentage in which he alleged that appellee's three children, Thomas, Teron, and Terrance, were his biological offspring. Appellee's answer requested an order establishing appellant as the father of the children and granting her sole custody with appellant to bear the costs of child support, attorney fees, and other costs. In May 1992, the court adopted a magistrate's decision establishing a parent-child relationship between appellant and the three children, and ordering appellant to pay child support.
 {¶ 3} In January 2003, the Franklin County Child Support Enforcement Agency ("CSEA") filed a decision establishing a child support arrearage of $7,991.65. After objecting to this decision, appellant followed with a Civ.R. 60(B) motion to vacate the judgment of parentage and child support, and sought an order for genetic testing for Thomas and Terrance. The court ordered genetic testing, which ultimately determined (to a 99.99 percent certainty) that appellant is the biological father of Terrance, but that he is not the biological father of Thomas. Appellant then moved to vacate the judgment of parentage and child support.
 {¶ 4} The trial court followed Cuyahoga Support Enforcement Agency v.Guthrie (1999), 84 Ohio St.3d 437, in determining that it could vacate the initial finding of parentage so long as the evidence supported a finding that there was a zero percent chance that appellant is the biological father of Thomas Benford. The court additionally noted that, although its duty is to protect both the child's best interests and the relationship between a minor child and his parents, at the time of the court's decision Thomas Benford was 28 years old.
 {¶ 5} Regarding appellant's request that the court cancel his child support arrears with regard to Thomas, and that the court order appellee to reimburse appellant for support already paid, the court refused to permit appellant to reduce his arrearage retroactively. Thus, the court denied appellant's request to vacate the arrears "for public policy reasons outlined in Emery [v. Emery (1995)], 101 Ohio App.3d 559, as to allow such avoidance would be inequitable and unjust to [appellee]." Although the court did not specifically address appellant's request that appellee reimburse him for past support already paid, by implication, the court's order denied this request.
 {¶ 6} Appellant now appeals and raises the following as error:
The trial court erred in refusing to vacate the entire parentage order, including child support arrears, after vacating the parentage determination pursuant to ohio revised code section 3111.16.
 {¶ 7} R.C. 3111.16 provides, in part:
The court has continuing jurisdiction to modify or revoke a judgment or order issued under sections 3111.01 to 3111.18 of the Revised Code to provide for future education and support * * *.
 {¶ 8} In Guthrie, the trial court had ordered a judgment of paternity to be vacated due to genetic test results indicating a zero percent probability that appellee was the father. The Ohio Supreme Court found that R.C. 3111.16 gave the trial court authority to vacate the initial finding of paternity. The court stated:
* * * In vacating the initial finding of parentage, the court was obviously aware of and considered all interests involved, including the best interests of the minor child. In this regard, we are not prepared to say that the court erred in vacating the prior finding of paternity. We believe that, given the circumstances here, the subsequent finding of nonpaternity constituted a change in circumstances that warranted relief from the initial finding of parentage.
However, in vacating the initial determination of parentage, the juvenile court further held, and the court of appeals agreed, that appellee was not responsible for any support payments. We agree that the situation here warrants prospective relief of support payments. On the other hand, we do not believe that appellee should be permitted to avoid any arrearage that presently exists as a result of his own inexcusable conduct. Appellee voluntarily and deliberately disregarded initial parentage proceedings, thereby causing a delay of the finding of nonpaternity. Thus, we affirm, though for different reasons, the judgment of the court of appeals to the extent that it determined that the juvenile court had the authority to vacate the initial determination of parentage. * * *
(Emphasis sic.) Id. at 444.
 {¶ 9} Here, appellant attempts to distinguish Guthrie on the grounds that, unlike the putative father in that case, appellant sought judicial relief as soon as appellee informed him he was not the father. Not having sat on his rights, appellant maintains that, because he believed until recently that he was the father and because he timely acted upon information that he was not, he is entitled to relief not only from the parentage order, but also from the support arrearage.
 {¶ 10} The trial court relied upon Emery v. Emery (1995),101 Ohio App.3d 559, for the principle that a court may not disturb an arrearage, but may only modify the obligor's future support obligations. Appellant asserts that Emery is distinguishable because it involved a post-divorce decree request for modification of a support order, pursuant to Civ.R. 75(I), whereas here, appellant and appellee were never married.
 {¶ 11} Our standard of review is whether the trial court abused its discretion, that is, whether its decision evinces an attitude that is "unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. As to that review, we agree with appellant that the facts of this case are different from those at issue in Guthrie
and Emery. We conclude, however, that the trial court did not err in refusing to vacate appellant's support arrearage.
 {¶ 12} As noted above, appellant initiated parentage proceedings to establish that he is the father of the three children by filing a complaint to establish parentage on January 23, 1992. In that complaint, appellant alleged that "the three minor children listed above were conceived as a result of acts of sexual intercourse between the Plaintiff, Henry T. Benford, and Defendant, Germaine R. Smith." Appellant specifically alleged that the oldest child, Thomas, "was conceived as a result of sexual intercourse between the parties between the months of November, 1976 and January, 1977[.]" In her answer, filed February 19, 1992, appellee admitted appellant's allegations as to parentage. She sought an order establishing parentage and an order requiring child support.
 {¶ 13} By judgment entry dated May 14, 1992 (and amended in June 1992), the court established a father-child relationship between appellant and the three children, and ordered appellant to pay appellee $102.23 per month per child, plus an arrearage that had accumulated since the filing of the complaint. The court also ordered the creation of new birth certificates identifying appellant as the boys' natural father, and ordered that the boys' names be changed from "Johnson" to "Benford."
 {¶ 14} In July 1992, appellant moved for an order terminating his obligation to pay support for one of the boys, Teron, because Teron was living with appellant. By affidavit, appellant stated:
4. I have had substantial contact with the minor children throughout their lifetime. From 1976 through 1989 their mother and I lived together with the children as a family unit.
5. After their mother and I separated in 1989 and until on or about October 25, 1991 the children alternated living two weeks with their mother and two weeks with myself.
 {¶ 15} Reflecting this change in circumstances, an agreed entry filed September 28, 1992, revised appellant's support obligation to $7.30 per month, plus poundage, for a total of $7.45 per month, effective July 1, 1992. The parties agreed that appellant owed an arrearage of $56.51, which the record reflects appellant promptly paid.
 {¶ 16} By agreed entry filed July 8, 1996, appellant and appellee again agreed to adjust appellant's support obligation. That entry provides that "the parties agree to deviate down to an order of $0.00 per month." The entry also states that the parties agree that paying the guideline amount would be unfair, unjust, and inappropriate "because of the incomes of the parties and the fact that they each have one child." While this entry does not reflect which child lived with which parent, other portions of the record reflect that Terrance lived with appellee and, presumably, Teron continued to reside with appellant. Finally, while this entry does not reflect support for Thomas, the order for his support terminated by operation of law when he was 18, or on September 23, 1995, and, presumably, he was emancipated from appellee's home by the time of the July 8, 1996 entry.
 {¶ 17} By entry filed February 25, 1999, the court again changed appellant's support obligation and ordered appellant to pay child support in the amount of $243.08 per month, plus processing, for a total of $247.94, effective September 1, 1998. The documents attached to the entry identify Terrance as the only child subject to the order.
 {¶ 18} In January 2003, CSEA held an administrative termination hearing, at which appellant appeared. By decision filed January 24, 2003, the hearing officer noted that he was correcting errors in CSEA's original termination investigation, and he found an arrearage in the amount $7,806.62, plus a processing charge arrearage of $185.03, as of December 31, 2002. As to Thomas, the hearing officer found that the support obligation for him terminated upon his emancipation in 1995, but that the law in effect at that time did not require an adjustment to the then-effective $7.30 per month obligation because it applied to all three children. As to Terrance, he recommended that the support obligation be terminated as of December 12, 2001, due to Terrance's emancipation. As for the calculated arrearage, the hearing officer made a number of corrections and findings, and stated:
* * * Mr. Benford raised two additional issues: First, that he has reason to believe that he may not be the biological father of at least one of the children originally addressed in this case. This is not a new issue, but one he has raised with the Agency since at least 02/16/99 when he was advised to seek private legal counsel for assistance. Second, he raised the issue of current limitations on his ability to liquidate whatever arrears may be determined (which he is likely to contest in light of his paternity concerns). He indicated that he has not yet been accepted for SSI or Social Security Disability though he is receiving general assistance in the amount of $115.00 monthly based on a finding of a disability. Even though it appears certain that ordering liquidation at the "existing" rate of $243.08 monthly exceeds Mr. Benford's actually [sic] ability to pay, this Hearing Officer must recommend liquidation at the statutory rate * * * based on the last support obligation in existence, being $243.08 monthly (not including processing charge). Mr. Benford may object to this recommendation in order to bring his issues before the Court.
 {¶ 19} Appellant timely objected to the administrative hearing decision and recommendation. His objection stated that Thomas and Terrance are not his biological sons, and he sought to be reimbursed for the child support he had paid for nine years. Appellant did not object based on an inability to meet the monthly payment obligation. As a result of appellant's objection, the trial court vacated the hearing officer's decision and set the matter for hearing. From there, appellant pursued his claim through the motions and genetic testing cited above.
 {¶ 20} From this record, we may conclude a number of things. First, although the court, in May 1992, ordered appellant to pay $102.83 per month per child, effective July 1, 1992, appellant and appellee had agreed to a monthly obligation of only $7.30 per month for all three children. That $7.30 monthly obligation continued until July 1996, when appellant and appellee agreed to forego child support altogether, recognizing that Thomas had emancipated from home at that point; Teron lived with appellant; and Terrance lived with appellee. It was not until February 1999 that the court ordered appellant to pay a substantial amount in child support, i.e., $243.08, all of which went to support Terrance, the only child left at home. While appellant does not specify the extent to which the arrearage actually applies to support for the now-28-year-old Thomas, we can easily discern from the record that any current arrearage began to accrue in 1999 and relates to support for Terrance, appellant's biological son. The record does not reflect any significant arrearage between May 1992 and September 1995, the time during which appellant paid a very small amount of support, in part, for Thomas. Moreover, even if we were to add up all of the support appellant was charged between May 1992 and September 1995, and attribute it all to Thomas, it would total only a small fraction of the $7,991.64 appellant owes.
 {¶ 21} Second, appellant claimed in his affidavit that he learned in late 2002 that Thomas and Terrance are not his biological sons. The record reveals, however, that he raised the issue with CSEA at least as early as February 1999. Up until the CSEA termination investigation and hearing in 2002-2003, appellant had legal representation and, given his record of active filings, was surely competent to raise this issue with the court.
 {¶ 22} Third, with respect to Thomas, we must consider that it was appellant who sought to establish parentage. This is not a case where the mother pursued appellant legally and duped him into believing that he was the father of a child not really his own. In July 1992, appellant stated, "I have had substantial contact with the minor children throughout their lifetime. From 1976 through 1989 their mother and I lived together with the children as a family unit." He also detailed the time he spent with the children, time he obviously thought was very important. Thus, it appears that, in 1992, his willingness to pay support for the care of all three children did not arise from a mere biological relationship; it apparently arose from his desire to legally recognize his love and support for them.
 {¶ 23} Appellant's anger at learning definitively in 2004 that Thomas was not his biological son, even if it was something he had suspected for years, is understandable. From a legal perspective, however, as there does not appear to be any current arrearage that relates to his financial support for Thomas, appellant received from the trial court his only meaningful remedy: the court vacated the 1992 order establishing parentage. To the extent that the arrearage could conceivably relate to appellant's support for Thomas, given appellant's pursuit of the parentage action, his representations concerning the family relationship that existed at the time, the small amount of support paid to appellee between 1992 and 1995, the passage of time since Thomas's emancipation, and appellant's apparent knowledge of these paternity issues for several years before pursuing them legally, the trial court did not abuse its discretion by refusing to modify the support order.
 {¶ 24} To the extent that the arrearage appellant seeks to erase relates to support for Terrance, who is appellant's biological son, the trial court did not abuse its discretion by refusing to modify the support order so as to excuse that arrearage. As to that significant arrearage, it appears that appellant did not raise before the trial court an objection that might have supported a change to the payment schedule: his inability to meet the monthly obligation. Because appellant did not raise this objection to the trial court, even after the hearing officer advised appellant he could do so, the trial court did not err by not considering it.
 {¶ 25} For these reasons, we overrule appellant's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
Judgment affirmed.
Klatt and McGrath, JJ., concur.